# Mary Lee Coal and Railway Company *v.* Chambliss.

*Action by Employe to Recover Damages for Personal Injuries.*

1. *Demurrer must state specific objections.*—However insufficient pleadings may be in other respects, yet if not obnoxious because of the particular grounds of demurrer assigned, the demurrer must be overruled.

2. *Averments of negligence.*—Very general averments of negligence, little short of mere conclusions, meet all the requirements under our system of pleading.

3. *Contributory negligence is a matter of defense.*—In a complaint claiming damages for personal injuries received while in the service of the master, it is not necessary to aver that the plaintiff was in the exercise of due care at the time the injury was inflicted.

4. *American tables of mortality.*—Tables of mortality shown to be in general use in the United States by insurance companies, are competent, but not conclusive evidence of the probable duration of life, to be weighed with the other evidence in the case.

5. *Injury does not raise presumption of negligence.*—A master is not an insurer that his appliances are absolutely free from defect, and the fact that the servant, a fireman, was injured while obeying the instructions of the engineer to throw open a switch similar to those in use on well regulated railroads, which act was not within the scope of his ordinary duties, does not change the rule that the employe in an action for personal injuries must show that the injury complained of was caused by some defect which arose or had not been discovered or remedied owing to the negligence of the master or of some person entrusted by him with superintendence.

| | |
|---|---|
| 97 | 171 |
| 101 | 44 |
| 97 | 171 |
| 104 | 658 |
| 105 | 606 |
| 97 | 171 |
| 107 | 655 |
| 97 | 171 |
| 113 | 515 |
| 114 | 187 |
| 97 | 171 |
| 120 | 544 |
| 122 | 239 |
| 97 | 171 |
| 126 | 257 |
| 97 | 171 |
| 131 | 425 |
| 97 | 171 |
| 144 | 225 |
| 144 | 309 |

[Mary Lee Coal & Railway Co. v. Chambliss.]

6. *New trial when granted.*—When, after allowing all reasonable presumption of its correctness, the preponderance of evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust, a new trial should be awarded.

7. *Affirmative charge proper when there is no evidence.*—When there is no evidence to sustain the allegation of one count of a complaint, it is error to refuse to charge the jury at the written request of the defendant, that if they believe the evidence, they must find for the defendant on that count.

APPEAL from Jefferson Circuit Court.

Tried before Hon. JAMES B. HEAD.

The complaint in this case contained two counts and omitting other parts, the allegations of negligence are as follows: First, Plaintiff avers that his said injuries and damages were caused by reason of defects in the condition of the ways, works, machinery or plant used in, or connected with the said business of defendant, viz: The said engine was defective, the means and appliances for stopping said engine were defective, the said switch was defective, the throw of said switch was defective, the said track at or near said switch was defective. The said defects arose from, or had not been discovered, or remedied by reason of the negligence of defendant or of some person in the service or employment of defendant intrusted by defendant with the duty of seeing that said ways, works, machinery or plant were in proper condition.

Second, Plaintiff avers that he was run upon as aforesaid and suffered said injuries, damages and loss, by reason of the negligence of a person or persons in the service and employment of defendant who then and there had the charge or control of said engine, viz: the said person or persons negligently caused or allowed said engine to run upon plaintiff. Plaintiff further avers, that he was run upon as aforesaid and suffered said injuries, damages and loss, by reason of the negligence of a person or persons in the service and employment of defendant, who then and there had "superintendence intrusted," to them whilst in the exercise of such superintendence, viz: said person or persons negligently caused plaintiff to be upon or near said track in front of said engine, and negligently caused or allowed said engine to be run upon plaintiff.

Plaintiff further avers that he was run upon as aforesaid and suffered said injuries, damages and loss, by reason of the negligence of a person or persons in the service and employment of defendant to whose orders or directions plaintiff was then and there bound to conform, and did conform, and his said injuries and damages resulted from his having

[Mary Lee Coal & Railway Co. v. Chambliss.]

so conformed, viz: said person or persons negligently order-ed or directed plaintiff to throw said switch in front of said engine, which was dangerous to plaintiff, who was then and there young and inexperienced in said work.

Demurrers were filed to first count as follows: (1) "Said count fails to allege that plaintiff was injured by any negli-gence of the defendant." (2) "Said count fails to allege that plaintiff was using due care at the time of the alleged injury." (3) "Said count fails to allege in what respect the ways, works, machinery or plant of defendant was defec-tive." (5) "Said count fails to allege in what respect the means and appliances for stopping the train were defec-tive." (6) "Said count fails to allege in what respect the switch was defective." (8) "Said count fails to allege in what respect the track was defective." For cause of demur-rer to the second count, defendant says: (1) "Said count fails to allege that the plaintiff was injured by any negli-gence of the defendant." (2) "Said count fails to allege that plaintiff was using any care at the time of the alleged injury."

The demurrers were overruled. There was testimony that plaintiff's left leg was amputated above the knee and his right heel crushed at the time of the injury complained of. One McCary testified that he was a life insurance agent and well acquainted with the tables used by such compa-nies in estimating the probable duration of life, and that the American table of mortality was in general use for that pur-pose over the United States, by such companies, and others having occasion to make such estimates. He identified the table offered as the one in general use. The defendant ob-jected to, and moved to exclude this evidence.

In the oral charge to the jury the court instructed them among other things, as follows: "Now you understand if the plaintiff was in the employment of defendant as fireman, and was under the control of the engineer, and subject to his orders, and the engineer ordered the plaintiff to throw the switch, and if he was guilty of negligence in so ordering the plaintiff to throw the switch, which resulted in the in-juries complained of, then this would be such negligence as would make the defendant liable, if the plaintiff was guilty of no contributory negligence." The defendant duly ex-cepted to the giving of this portion of the oral charge, and also excepted to the court's refusal to give several charges requested by it; but it is deemed unnecessary to set these charges out at length. There was a verdict for the plaintiff in the sum of $10,000 damages. Judgment having been ren-

dered for the plaintiff, the defendant moved the court to set
aside the judgment, and to grant it a new trial, upon the
ground that the verdict was contrary to the evidence, and
of erroneous rulings by the court. This motion was over-
ruled, and these various rulings are assigned as error.

SMITH & LOWE, for appellant, insisted that there was no
evidence of defects in the appliances and that plaintiff as-
sumed the ordinary risks of his employment, citing *Ford v.
Anderson*, 139 Pa. St. 261; *Bivins v. Ga. Pac. Rwy. Co.*,
manuscript; *Angerstein v. Jones*, 23 Am. St. Rep. 174; *Le-
high Coal Co. v. Hayes*, 15 Am. St. 680; *Hickey. v. Saaffe*, 105
N. Y. 26; *Coulland v. Tecumseh Mills*, 151 Mass. 85; *Warden
v. L. & N. R. R. Co.* 94 Ala. 277.

BOWMAN & HARSH, *contra*, on the point that contributory
negligence need not be negatived by the complaint, cited
*Gov't. St. Rwy. v. Hanlon*, 53 Ala. 70; *M. & M. R. R. Co. v.
Crenshaw*. 65 Ala. 566; *Holt v. Whatley*, 51 Ala 569; that the
averments on negligence were sufficiently specific, *L. & N.
R. R. v. Hawkins*, 92 Ala. 241; *M. & M. R. R. v. Thomas*,
42 Ala. 672; and sustained the oral charge of the court, cit-
ing *Hodges v. Coleman*, 76 Ala. 103; 3 Brick. Dig. p. 113.

COLEMAN, J.—The plaintiff's action is in case, and
brought to recover damages for personal injuries. The jury
rendered a verdict for plaintiff and assessed his damages at
ten thousand dollars. The complaint contains two counts,
and to each count separate demurrers were filed. The rule
is, that though the pleading may be subject to demurrer, if
it be not subject to the objections particularly assigned the
demurrer is properly overruled.—*Sledge v. Swift*, 53 Ala.
110; *Daniels v. Hamilton*, 52 Ala. 105; *Eads v. Murphy*,
*Ib.* 520.

The first assignment of cause of demurrer goes to the
sufficiency of the averments of negligence. We have fre-
quently held, that very general averments, little short of
mere conclusions, meet all the requirements under our sys-
tem of pleading. The authorities are collected in the case
of the *Geo. Pac. R. R. Co. v. Davis*, 92 Ala. 307.

The grounds of demurrer, directed to this supposed de-
fect, were properly overruled.

The second assignment raises the question as to whether
plaintiff must aver affirmatively the exercise of due care on
his part. This question has been ruled adversely to demur-
rant and there was no error in the action of the court in

[Mary Lee Coal & Railway Co. v. Chambliss.]

this respect.—*Bromley v. Bir. M. R. R. Co.* 95 Ala. 397. Neither of the assignments as cause of demurrer present the question of the joinder in the second count of a cause of action arising under subdivision 2 of section 2590, with one arising under subdivision 3 of the same section. See *Dusenbury's case*, 94 Ala. 413.

There was no error in admitting in evidence the testimony of the witness McCary and the American Tables of Mortality.—*Seaboard Man. Co. v. Abe Woodson*, 94 Ala. 143. We have invariably admitted these Tables of Mortality as competent evidence. They are not conclusive upon the question of the duration of life, but are competent, to be weighed with other evidence. The physical condition of the injured person at the time of and next preceding the injury, his general health, his avocation in life with respect to danger, his habits and probably other facts, properly enter into the question of the probable duration of life.

The other assignments of error go to the correctness of a part of the oral charge given *ex mero motu* by the court, and to the refusal of the court to charge as requested by the defendant.

The undisputed facts show, that the plaintiff was a fireman employed by the engineer, to whose orders as such he was bound to conform, that the engine had just backed in on the main line from a side track, and that plaintiff left the engine for the purpose of throwing the switch, and while absent from the engine was run over and injured. The proof shows that the switchman in charge of this switch was absent from his place of duty. It is a disputed question of fact, whether the plaintiff left the engine of his own accord, or was ordered by the engineer to leave the engine and throw the switch. The exact cause of the injury was also controverted, the plaintiff claiming that on account of some defect in the construction of the switch he was unable to force it down to a horizontal position so as to adjust it perfectly, and that as the train moved forward, either by reason of the defect of the switch, or by reason of the wheels striking the rails of the switch, in its then position the lever of the switch was caused to fly up with such force, as to throw the plaintiff on the track in front of the wheels, and he was in this way injured.

Defendant's contention was, that there was no defect in the switch, and that after the engine had passed upon the main line, the plaintiff attempted to get upon the foot-board to the tender of the engine while in a moving condition, and slipped and fell, and was run over. The evidence is suffi-

ciently satisfactory to show that many well regulated railroads used switches of a similar character and constructed exactly as the one in question.

There is no evidence to show exactly in what the defect consisted or how long it had continued, nor any evidence to show that the defect arose from, or had not been discovered or had not been remedied by reason of the negligence of the defendant, or of some person in the service of the master and entrusted with the duty of seeing that it was in proper condition, unless it be the bare statement of the plaintiff that he was not able to push the lever down to a horizontal position, and that it had a tendency to forcibly fly back when pushed down, and the further statement of the father, that at some time the switch had been "overhauled," but when, whether before or after the injury, the witness did not seem to know. How long the defect testified to by the plaintiff, if there was such defect, had existed, is not shown, or whether the defendant or any person entrusted with the duty of seeing after it, or officer superior to plaintiff, knew of it, or ought to have known of it, lies wholly in conjecture, without a fact to support a legal inference in this respect. Such evidence if believed by the jury, would not authorize as a legal inference, the conclusion that the defendant was guilty of the negligence charged in the first count of the complaint, and which the law required him to sustain before he could recover upon this count.—*Seaboard Man. Co. v. Woodson,* 94 Ala. 143. We need not consider that part of the second count which alleges the negligence "of a person or persons in the service and employment of the defendant who then and there had superintendence intrusted to them whilst in the exercise of such superintendence," &c. There was no proof offered to sustain this averment.

The second count further avers that the injury arose from the negligence of a person in the service of the defendant to whose orders he was bound to conform and did conform · · · · viz: "said person negligently ordered or directed the plaintiff to throw said switch in front of said engine, which was dangerous to plaintiff who was then and there young and inexperienced in said work," &c.

As to this averment the proof shows that plaintiff was seventeen years of age, that he was employed by the engineer as a fireman, and was under his orders, and that he had no experience as a switchman, and had not undertaken to throw this switch at any previous time. There was evi-

dence tending to show that the engineer ordered the plaintiff to throw the switch on this occasion.

The plaintiff testified that he knew it was the duty of the switchman to throw the switch, but the regular switchman being absent, he undertook to perform the duty upon the order of the engineer.

An employe, who undertakes to perform a duty, not within the scope of his employment as a general rule, assumes the risk of such undertaking, but the rule is not of universal application. In 7 Amer. & Eng. Encyc. of Law, p. 832, it is said that "It is the duty of the master who knowingly employs a youthful or inexperienced servant and subjects him to the control of another servant, to see that he is not employed in a more hazardous position than that for which he was employed, and to give him such warning of his danger as his youth or inexperience demands." Many authorities are cited in support of the text, and the same general principle is clearly stated in the case of *The Railroad Co. v. Fat*, 17 Wal. (U. S.) 553. We have stated the age of the plaintiff and the fact that he was employed by the engineer in charge, and if he is to be credited, believed he was bound to obey the instructions given to him by the engineer, and that he had been in the service of the defendant as fireman, not quite two months. Upon these facts, we think the court properly left it to the jury to say, whether plaintiff assumed the risk, incident to the performance of the duty, directed by the engineer, and that there was no error, in so far as the charge refused asserted the proposition, that plaintiff assumed the risk of obeying the order to throw the switch. Pierce on R. R. p. 376; *Labor v. Ch., I. & Bur. R. R. Co.* 52 Ill. 401; Beach on Con. Neg. § 358; Thompson on Neg. 975 § 5.

To sustain the averment of negligence now under consideration, requires more proof, than the giving of the order to throw the switch. The court charges that the order "to throw said switch in front of said engine was dangerous to plaintiff who was young and inexperienced." To sustain this averment it was necessary to show by evidence, that there was danger in the performance of this duty, either on account of the character of the service to be performed, or by reason of the defective condition of the ways, works and machinery necessary to be used, or that the appliances were from their nature, dangerous to a young and inexperienced servant in the performance of the duty. There is nothing in the record to show that the mere performance of the duty of throwing a switch is attended with any danger.

12-97

[Mary Lee Coal & Railway Co. v. Chambliss.]

. The plaintiff by his testimony shows that he understood the working of the switch, and the manner of performing the duty directed by the engineer, and that apart from the defect complained of. there was no danger or risk attending the duty of throwing the switch. The injury could not have resulted from a failure to instruct the plaintiff as to the manner of performing the service to be rendered.

Conceding then for the purpose of this count, that the switch was defective, as testified to by plaintiff, what additional proof is necessary to authorize a recovery under this count? The charge is that the engineer negligently ordered him to this duty. The plaintiff is an employe of the defendant. He sues under the employer's act. He must prove negligence. In his case, the injury does not raise a presumption of negligence. As we have said before, there is no proof to show in what the defect consisted, nor as to how long it had existed, if there was such defect, and it is not contended. that the engineer had any knowledge or reason to suppose that the switch was otherwise than in good condition.

An employe by his agreement assumes the ordinary risks incident to and within the scope of his employment. He may be presumed to know these when he enters into his contract. This general rule will not apply when the employe is young and inexperienced and these facts are known at the time to the employer.—*Coomles v. New. Bradford Co.*, 102 Mass., 573; *Williams v. S. & N. R. R. Co.*, 91 Ala. 640; Thompson on Neg., p. 978, § 8.

For injuries resulting to an employe from defect in the ways, works and machinery, the master is not liable, "unless the defect arose from or had not been discovered or remedied owing to the negligence of the master or employer, or of some person in the service of the master or employer, and intrusted by him with the duty of seeing that the ways, works and machinery or plant were in proper condition." This is the rule applicable to employees injured while acting withing the scope of their employment. If an employe voluntarily undertakes to perform some duty outside of the scope of his employment, and is injured, the law gives him no right of action against the master, but when an employe is directed to do some duty outside of his employment, under such circumstances as that it cannot be said that he assumed the risk, and is injured in consequence of a defect in the ways, works and machinery, what then is the proper rule to be applied?

In the case of *The Pittsburg, Cin. & St. Louis R. R Co. v.*
Vol. 97.

*Adams*, 105 Ind. 151, 166, the rule is declared to be "that when a a servant is put at work outside of his employment, and is injured by reason of defective machinery, railroad track, &c., without his fault, the master is liable, regardless of the care he may have exercised to keep the machinery, railroad track, &c., in a safe condition. When a servant is thus ordered to work at a particular place, or with particular machinery outside of his employment, the master impliedly assures him not only that he has exercised reasonable care to have the place, machinery, &c., in a safe condition, but also that they are in a safe condition and fit for the business for which they are used." We think the rule declared in the case cited from the Supreme Court of Indiana imparts into the contract of employment an obligation not within the contemplation of the parties, and one which no prudent employer would assume. It makes the master an insurer that the ways, works and machinery are absolutely secure. A railroad owes no higher duty to a passenger, than that here imposed upon the master to his servant. Does not the master fully discharge his obligation in this respect to all his employees when he exercises reasonable care and diligence in seeing that the ways, works and machinery are such as are in general use by well regulated railroads and that they are kept in proper condition. We know of no sound principle of law which exacts a higher degree of care and diligence on the part of the master to his employe than reasonable care and diligence. When this has been done, it can not be said as a matter of law that the master is guilty of negligence to his servants, so far as the negligence is attributable to defective ways, works and machinery. Where the evidence shows that the employment is more dangerous than that within the scope of his employment or that the servant is called to use machinery which requires skill not possessed by the servant, and not in use in the regular course of his service of employment, the law very properly holds the master liable under proper circumstances for such injuries as may result from the increased danger, but the liability here rests upon different principles from those which would make the master an insurer that the ways, works and machinery were absolutely perfect. It can not be said that the master has exercised reasonable care and diligence for the safety of his servant, when by his orders the servant is exposed to greater peril than that for which by his contract of employment he assumed, or when the master exposes his servant of immature years, or one inexperienced and unskilled without proper instruction and

[Mary Lee Coal & Railway Co. v. Chambliss.]

warning as to the peril of machinery or ways and works dangerous in their use. The master is not liable as an insurer against injury in such cases, but is liable for the consequences of the negligent omission of duty in failing to exercise reasonable diligence and care for their safety in thus exposing the servant to dangers outside the scope of employment, or without proper instruction or warning.

The question of principal contention in the courts has been as to the liability of the master in any event for an injury arising from the performance of a duty under orders outside of the regular service of the employe, and which his contract of service did not require the employe to obey. The law having regard to the relative situation of the parties has justly determined that under some circumstances the master shall be held liable, although the injury resulted from an act outside of the scope of the service of employment, but we do not think the rule can be extended upon principles of fairness to the master, so as to make him an insurer that his appliances are absolutely free from defect. Reasonable care and diligence in this respect is the extent of his liability.

There is some evidence tending to show that defendant's engineer was negligent after notice of plaintiff's peril, but there is no count in the complaint counting on such negligence, and we need not consider this phase of the case.

We are of opinion that the verdict of the jury was contrary to the evidence, and a new trial should have been awarded. It is clear that plaintiff relied for a recovery exclusively, upon the theory that by reason of the defect in the switch, when the wheels supporting the engine struck the rails of the switch, the lever of the switch, which he was at the time attempting to press down, was made to fly up with so much force and suddenness that it threw him in front of the engine. The testimony of the witness Sharp, who was examined as an expert, tended to show that this was possible, but the testimony in rebuttal on this point so greatly preponderates, and is of such a character, that we are clearly of the opinion the case is fully within the rule declared in *Cobb v. Malone*, 92 Ala. 630, to-wit : "After allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust." It might unduly prejudice plaintiff's case on another trial were we to particularize the facts which lead us to this conclusion.

The defendant was entitled to the general charge under the

first count, and was entitled to a new trial, whether the verdict was rendered upon the first or second count of the complaint.

Reversed and remanded.