## SAN BOIS COAL CO. v. RESETZ.

No. 3412.    Opinion Filed September 22, 1914.

(143 Pac. 46.)

1. **MASTER AND SERVANT—Death of Mine Employee—Sufficiency of Evidence—Contributory Negligence—Question for Jury.** In a suit in damages for personal injuries resulting in death, alleged to have been caused by a violation of Comp. Laws 1909, sec. 4380 (Rev. Laws 1910, sec. 3982), where the same is presented upon the theory that deceased fired but one shot, that it was a "windy shot," and came in contact with the coal dust negligently permitted by defendant to clog the air, igniting it and causing the explosion, and the cause was defended upon the theory that defendant had complied with the law, that the explosion was caused by a windy shot igniting the coal dust produced and suspended in the air by a follow shot, evidence examined, and held to reasonably tend to prove a violation of the statute, that said violation was the proximate cause of the injury, and that, as the testimony conflicted upon the question of contributory negligence, the same was a question for the jury.

2. **APPEAL AND ERROR—Harmless Error—Admission of Evidence.** In attempting to prove a violation of the statute, if error, it was harmless for the court to permit plaintiff, in proving the general condition of the mine, to prove the existence of the accumulation of coal dust therein not amounting to a violation of the statute.

3. **EVIDENCE—Competency—Written Instrument—Reference to by Opposite Party.** Where, in the cross-examination of a witness, the contents of a written instrument not in evidence is referred to, but no part thereof introduced in evidence, it was not error for the court to exclude the instrument when offered in evidence by the opposite party.

4. **TRIAL—Refusal of Instructions Covered.** It was not error for the court to refuse a requested instruction covered by the court's charge.

5. **MASTER AND SERVANT — Injury to Servant — Defense.** The violation of a rule by the servant will not defeat a recovery for the negligence of the master, unless such violation was the proximate cause of the injury.

6. **TRIAL—Refusal of Instructions.** Where a requested instruction is objectionable in substance, and such that the court could not properly give without correction, it is not error for the court to refuse to give it.

7. **EVIDENCE—Mortality Tables—Competency—Conclusiveness.** Mortality tables, shown to be in general use in this country by insurance companies, are competent, but not conclusive, evidence of the probable duration of life, and are to be considered by the jury with the other evidence in the case, and that, too, although they do not apply to a man in the occupation of deceased at the time he was killed.

8. **DEATH — Damages — Excessive Recovery.** Where the evidence proved that deceased, who met death through the negligence of defendant, left a widow and six children, the oldest of whom was thirteen and the youngest six years old, that he was industrious, in good health, and earning $10.40 a day as a shot firer when killed, and that all his earnings went to his family, **held,** in a suit by his widow for the benefit of herself and children, that a verdict of $15,000 is not excessive.

(Syllabus by the Court.)

*Error from District Court, Haskell County;*
*Malcolm E. Rosser, Judge.*

Action by Maria Resetz against the Sans Bois Coal Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*C. E. & H. P. Warner* and *Brown & Lawrence,* for plaintiff in error.

*Clark & Crittenden,* for defendant in error.

TURNER, J. On February 18, 1910, Maria Resetz, defendant in error, in the district court of Haskell county, sued the Sans Bois Coal Company, plaintiff in error, in damages for personal injuries to her husband, Joseph Resetz, which resulted in his death. The petition substantially states that on December

30, 1909, deceased was in the employ of defendant as a shot firer in its mine No. 2, in that county; that while so engaged on that day, and while firing shots in the seventh entry of said mine, an explosion occurred, resulting in his death; that said explosion was caused by the negligence of the plaintiff in permitting inflammable gases and large quantities of coal dust to accumulate and clog the air in the entries, airways, and rooms of said mine, and particularly in the seventh north entry, without wetting it down—contrary to Comp. Laws 1909, sec. 4380 (Rev. Laws 1910, sec. 3982).

For answer, after general denial, defendant, in effect, admitted that deceased met his death while so employed, and pleaded contributory negligence and assumption of risk.

There was trial to a jury, and a judgment for plaintiff; and defendant brings the case here.

It is assigned for error that no violation of the statutes was shown, and for that reason defendant's demurrer to the evidence should have been sustained. The question of the presence of inflammable gas in the mine having been eliminated, it is for us to determine whether the evidence reasonably tends to show a violation of the part of the statute relied upon. It reads:

"In case any entry, or room in any coal mine in this state, is so dry that the air becomes clogged with dust, the operator, owner, lessee or agent, or whoever is operating said mine in any capacity, shall have such entry, airway or room, regularly and thoroughly sprinkled, sprayed and dampened with water, so that the air will not be charged with dust. * * *"

The facts disclose that the part of defendant's mine material in this cause consists of the "seventh north top entry" and the "seventh north bottom entry"; that they run practically north and south and parallel with each other; that from the "seventh north bottom" entry there leads off to the left the "seventh north bottom stub entry," and from it to the left lead off rooms 1, 2, 3, and 4, in which coal is mined, and continuing, ends in the lower or back entry of that stub. At the time of the explosion John Morris and Ed. Bishop were at work in this stub. From this "seventh north bottom stub entry" there

were breakthroughs into an entry about parallel therewith, known as the "seventh north top stub entry." This entry also led off from the "seventh north bottom entry," and from it led off to the right, rooms numbered 1, 2, 3, 4, 5, and 6, and ended in what was known as the lower or back entry of that stub; both the "seventh north bottom stub entry" and the "seventh north top stub entry" connecting near the bottom stubs. In the lower or back entry of this "seventh north top stub entry," which was in the next working place to that of Morris and Bishop, worked Parrentz and Maroney at the time of the injury complained of. On the afternoon of that day came deceased, as was his duty, firing shots, which he had tamped and set in holes already bored for him, beginning with room 1 and firing said rooms 1, 2, 3, 4, 5, and 6. After lighting the shot or shots in room 6, he continued along the "seventh north top stub entry" to the face of coal at the lower or back entry of this stub, when the explosion, resulting from their firing, overtook him and he perished of afterdamp; the explosion expending its force, not in that part of the mine, but from room 6 in the direction from which he came.

The cause was prosecuted upon the theory that defendant had violated the statute as stated; that the deceased had fired but one shot in room 6; that it was a windy shot, and, coming in contact with the coal dust which was negligently permitted by defendant to clog the air, ignited it and caused the explosion. The cause was defended upon the theory that defendant had complied with the law in wetting the accumulated coal dust, and that the explosion was caused by a "windy shot" igniting the coal dust produced and suspended in the air by a "follow shot." As the state of the record is to the effect that defendant introduced other and further evidence after its demurrer to plaintiff's evidence was overruled, in determining whether the evidence reasonably tends to show a violation of the statute, we are at liberty to look to the whole record. That, however, we need not do, but will turn to the testimony of the first witness only. John Morris, after testifying that he had been a miner 38 years, said that at the time of the explosion he was working in this mine with Bishop

at the working place already indicated, and had been for five or six weeks; that he had been working in the mine four or five years; that—

"as a rule it was pretty dusty; that the dust was inflammable when suspended in the air. Q. I will ask you if during the time you were working in that entry, if that entry was ever sprinkled, or the place where you were working was ever sprinkled? A. Not that I know of. Q. I'll ask you if while you were working there in the back or lower entry of No. 7 north stub entry, if you had occasion to go into the upper entry of that stub? A. Yes, sir. Q. How frequently? A. I generally went up there most every day. * * * Q. I'll ask you what was the condition, as you noticed it, of the upper entry of the seventh north stub immediately preceding December 30, 1909? A. It was dry there. Q. Was it very dry? A. Yes, sir; it was very dry and dusty. Q. How far down that entry, as you remember it, did that dry condition extend—the entire stub entry, or just a portion of the entry? A. It did not go all over the entry. Q. How far down towards the main seventh did it extend? A. Probably about No. 5. Q. Up past the climber up to the upper entry it was dry and dusty? A. Yes, sir."

"The Court: * * * Is dust, where it collects and settles, explosive, or does it have to be suspended in the atmosphere? A. It is explosive anywhere.

"The Court: If it is lying in a pile, is it explosive? A. Not as explosive as when it is suspended in the atmosphere.

"The Court: It is being loose, floating in the air, that makes it explosive? A. Yes, sir.

"The Court: At the time you mention, was the dust suspended and floating in the atmosphere? A. Yes, sir."

Now here is a witness who testifies that the dusty condition extended back in the direction from which this shot firer came in the entry and beyond the room in which this explosion is conceded to have originated. To be sure, he is the only witness who so testified, and there may be abundant evidence to the contrary, and that every precaution was taken to wet this coal dust down; but his evidence alone was entitled to go to the jury, and, going, furnished evidence reasonably tending to prove that at the time of the explosion defendant had violated the statute in the particular alleged. Nor is there an absence of evidence to

show causal connection between this violation of the statute and the death of Resetz. This we gather from the physical facts. Here is this "seventh north top stub entry," shown by the map to be on an average of nine feet wide from the curtain across it at room five to the face of the back entry where Resetz was found dead, a distance of 100 feet. The going in that direction was against the air. It is apparent, with the air in that direction and clogged with dust at the time of the explosion as testified, that a shot, containing some six or seven sticks of dynamite in a bored hole six or seven feet long, fired at right angles to this entry from the face of room six, only six feet eight inches square, would throw flame into said entry and ignite this dust, if, indeed, the dust was not already at that face of the room, carried there in the air current. It will, therefore, not do to say that because the lower or back entry of the "seventh north bottom stub entry," where worked Morris and Bishop, and because the lower or back entry of the "seventh north top stub entry," where worked Parrentz and Maroney, where the statute was clearly violated by a failure to wet down the dust, were unaffected by the explosion, no causal connection existed. This for the reason that those were not the only parts of the mine relied on as affected by the violation of the statute, and consequent explosion, as we have seen.

In *Moore v. Grachowski,* 111 Ill. App. 216, the court said:

"Whether the negligence of a defendant is the proximate cause of the injury is a question of fact for the determination of the jury. *Railroad Co. v. Mochell,* 193 Ill. 210 [61 N. E. 1028, 86 Am. St. Rep. 318]. The evidence fairly tends to show that the presence of the dust, the firing of the shot, and the explosion in the entry followed in unbroken sequence to the injury, without an intervening efficient cause, and that appellants, by the exercise of ordinary care, could have foreseen that some injury might result from their negligence in permitting the dust to collect and remain in the entry, without sprinkling or spraying the same. *Car Co. v. Laack,* 143 Ill. 242 [32 N. E. 285, 18 L. R. A. 215]."

We are, therefore, of opinion that the evidence reasonably tends to show causal connection, and hence the court did not err in sending that question to the jury.

There is no merit in the contention that the uncontradicted evidence shows that deceased was guilty of contributory negligence in firing the shots prepared as they were, and hence the court erred in overruling the demurrer to the evidence. This for the reason that on this point it is not true, as assumed, that no conflict existed in the evidence. The evidence disclosed that perhaps the next day thereafter came two certain deputies, who were mine inspectors, to make an examination as to the cause of the explosion. With them, to make this examination, went three others and the witness Laport. As witnesses these three others testified that two shots were fired in room 6, and tended to prove that they were prepared in such a negligent manner that no reasonably careful shot firer would have lit them under the circumstances. On the other hand, the witness Laport, with equally as good an opportunity to know, being personally present and inspecting, gave it as his "opinion" that only one shot was fired. His "opinion" was not objected to, and it being apparent that he spoke from observation of the physical fact, his testimony was sufficient to produce such a material conflict in the evidence as to whether one or two shots were fired as to send to the jury that question, together with the question of the condition of the shot when fired, together with the ultimate question of contributory negligence. There is no need to cite authorities in support of the proposition that, where there is conflicting evidence on the question of contributory negligence, it is always a question of fact for the jury. It is only when the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court. It being our opinion that the evidence was sufficient to take the case to the jury on the question of the master's negligence, and sufficient evidence reasonably tending to prove plaintiff's theory of the case, we need only to determine whether the court erred in the admission of evidence or in his instructions to the jury.

In attempting to prove a violation of the statute, plaintiff, over objection, proved by three witnesses that the dust in the fifth south entry was so thick that it covered the track. There is no

evidence tending to show where the fifth south entry was, or how far it was from that part of the mine exploded, or, indeed, that it was affected thereby, or in any way contributed thereto, or that the dust referred to at that point clogged the air, rendering it necessary for defendant to wet it down. As to the permanent condition of the mine, several witnesses had testified that it was dusty. The evidence objected to was intended to specifically designate a particular locality therein where that condition existed at or near the time of the explosion. We can see no serious objection to the admissibility of this evidence, or any harm it could do defendant if admitted. Plaintiff, in making out her case under the statute, had a right to prove a statutory violation in any part of the mine and that such violation was the proximate cause of the injury. In this case, as there was no proof or claim that it was either, or, if a violation of the statute, that such accumulation was the proximate cause of the injury, the evidence could not have affected the finding of the jury. In *Maplewood Coal Co. v. Graham*, 134 Ill. App. 277, where the statute in question was substantially as here:

"It is insisted that the court erred in permitting the witness Thomas Back, the county mine inspector, to testify on rebuttal as to the dusty condition of the second north entry on December 11, 1905. Several witnesses introduced on behalf of appellant testified that the mine was naturally what is called a 'damp mine,' and that the second north entry had a 'bleeding' or 'seeping' roof. In view of this evidence, which related to a permanent condition of the mine, we are of opinion that the testimony of the witness Back, tending to show that the second north entry was dry and dusty on December 11, 1905, was competent, and that the objection of appellant that it related to a time too remote was properly overruled. We see no serious objection to the evidence introduced on behalf of appellee tending to show that the entire mine was dry and dusty. Proof of the condition of the mine as a whole necessarily related to the condition of its several parts."

It is claimed that certain parts of the deposition of Lockhart, mine foreman of defendant at this time, who had left its employ some three months before the explosion, were irrelevant

and prejudicial. After he had testified as to the condition of the mine generally up to the time he left, he was asked:

"Q. In what respect did the company fail to furnish a reasonably safe working place for the miners in No. 2 mine?"

Passing on a general objection thereto, the court in effect sustained the objection, on the ground that the question was leading and too general; nevertheless the witness answered:

"A. The superintendent did not furnish the necessary labor to lay water pipes, nor furnish labor to sprinkle the mine and keep it free from dust."

Defendant, having failed to move to strike the answer, cannot be heard to complain, for the reason there was no action of the court upon which to predicate error. The testimony then continued:

"Q. Did you ever call the attention of any of the mine officials to the fact that you needed more men to keep the dust removed from No. 2, and the mine properly sprinkled, in order that mine No. 2 might be in reasonably safe condition? A. Yes."

He was then asked and stated that he had two or three times called the attention of Superintendent Mercer to the dangerous condition of the mine and the attention of another superintendent thereto several times. It being conceded by both sides that notice to the master of the condition of the mine was not material, we cannot see how this evidence, although irrelevant, could be other than harmless. Shortly after the explosion the deputy state mine inspector made a report thereon. Farriman was the mine foreman at the time and a witness for defendant. After he had testified in support of the plea of contributory negligence and defendant's theory, in effect, that two shots had been fired, on cross-examination he was shown said report and asked if it said anything about two holes. Answering "No," he was asked if it said anything about a windy shot. Answering "Yes," he was asked if it said anything about the size of the cutting, whereupon he answered "No." As no part of said report was introduced in evidence by plaintiff the court did not err in holding the report inadmissible when offered by defendant. It is only when part of an instrument is introduced that the other side has a right to have the whole of it read in evidence.

The fifth and eleventh instructions requested by defendant were covered in the court's charge to the jury in Nos. 9 and 10, and especially in No. 15, which was a general charge upon the doctrine of contributory negligence. There the court said:

"If you believe from the evidence, and find from a preponderance of the evidence, that the death of Joseph Resetz was caused by his setting off a bad shot, that is, that the shot he fired was a dangerous shot, one that an ordinary and prudent man engaged in the same business would not have fired, would have regarded as dangerous, and his death was caused thereby, then you are instructed that your verdict must be for the defendant, because the decedent would have been guilty of contributory negligence, and the burden is upon the defendant to prove this by a preponderance of the evidence."

Defendant's requested instruction No. 3, is covered in the court's charge in No. 8.

It was not error for the court to refuse to give defendant's instruction No. 6. It reads:

"You are instructed that the deceased, Joseph Resetz, was required in performing his duties as shot firer to perform his duties carefully and in accordance with the rules and regulations, defining how and under what conditions shots might be fired or set off; if you find that there were such rules and regulations established by the defendant, and if you find that Resetz, in firing the shots at the time he was killed, violated or disobeyed such rules, then in so doing he was not in the performance of his duty, and, if you so find, your verdict must be in favor of the defendant."

This for the reason that the violation of a rule by the servant will not defeat a recovery for the negligence of the master, unless such violation was the proximate cause of the injury complained of. Personal Injuries in Mines (White) lays down the rule:

"The master has a duty to perform in order to further the safety of his employees, in prescribing and promulgating reasonable rules for the performance of their respective duties, and where, in the observance of this duty, he establishes such rules, he is entitled to a compliance therewith by his employees. If an employee elects to perform his duty by a method known to him to be dangerous, in violation of the direction of the master, or contrary to his established rules, the master will not

be liable for an injury to the servant, whether the danger is obvious or not; but the contributory negligence of the servant, in thus violating a rule, intended to protect him, will preclude his recovery. * * * But to prevent a recovery, upon the ground of contributory negligence, the violation of the rule or order must contribute to and cause the injury complained of."

The charge lacked the ingredient indicated.

But, says defendant, as nowhere in his instruction does the court charge upon the effect of a violation of a rule by the servant, the court should, of his own motion, have corrected this instruction, supplied said ingredient, and given the instruction as corrected. Not so, for the reason stated in *M., K. & T. v. West,* 38 Okla. 581, 134 Pac. 655:

"In order to entitle a party to insist that a requested instruction be given to the jury, such instruction must be correct, both in form and in substance, and such that the court may give to the jury without modification or omission. If the instruction as requested is objectionable in any respect, its refusal is not error."

And in *Fulsom-Morris, etc., v. Mitchell,* 37 Okla. 575, 132 Pac. 1103:

"Courts are not required to give instructions which necessitate qualifications or modification. If not good as requested, it is not error to refuse them."

See, also, *Freidman v. Weisz,* 8 Okla. 392, 58 Pac. 613.

It is contended that there is no evidence of the life expectancy of deceased, and that the verdict of $15,000 is excessive. Deceased left a widow and six children. This recovery is for them all. He was a man 43 years old, and although but a common laborer when not a shot firer, he earned as high as $10.40 a day. He was sound of body and mind, so far as the record discloses, and he worked all the time. All his earnings went to support his family. To be sure, no precise expectancy was proved. The mortality tables introduced in evidence to prove that fact did not apply to men in his occupation. But that does not mean that they were not admissible in evidence and had no probative force. They did, and tended to prove such expectancy,

and were entitled to go to the jury, along with the other evidence, for what they were worth. *Mary Lee Coal, etc., Co. v. Chambliss,* 97 Ala. 171, 11 South. 897. In *Vicksburg, etc., R. Co. v. Putnam,* 118 U. S. 545, 7 Sup. Ct. 1, 30 L. Ed. 257, the court said that these tables are competent evidence for the consideration of the jury, but not absolute guides to control their decision. But, apart from that guide, we think there was sufficient evidence upon which the jury might base substantial damages. In *Beems v. C., R. I. & P. Ry. Co.,* 67 Iowa, at page 443, 25 N. W. 696, the court said:

"Next it is urged that there was no evidence of the probable life of the deceased. No life tables were introduced in evidence, and it is claimed that without such evidence there was no proper basis for the computation of damages. The damages in cases like this never can be accurately estimated. It is the common practice to introduce life tables, that the jury may be advised of the probable duration of the life of a person of the age of deceased. But, after all, the amount of damages is largely a matter of conjecture. No estimate can be made of the probable illness, sickness, and inability to secure employment, nor can it be ascertained therefrom at what period in the prospective life the infirmities of age will reduce the capacity for labor. We do not think that the introduction of life tables in evidence is essential to the recovery of damages. It is not claimed that the damages awarded to plaintiff are excessive. The evidence shows that the deceased was 25 years of age, that he was an active, industrious man, in good health, with a common education, and that at the time of his death he was earning from $40 to $45 per month. These facts were sufficient to authorize an award of substantial damages; and, in the absence of a claim that an excessive amount was fixed by the jury, the verdict should be allowed to stand."

And we will let this verdict stand, although it is so urged. This for the reason that, inasmuch as it probably was intended by the jury to mean $5,000 to the widow and less than $2,000 each to the children, the verdict in no way shocks our conscience, or appears to have been rendered through passion or prejudice. If we can hold, as we did in *C., R. I. & P. Ry. Co. v. Devore, post,* 143 Pac. 864, that a judgment for $15,000 was not excessive for the loss of an eye, which reduced the earning power of

a locomotive engineer from that of a skilled laborer earning $130 to that of a common laborer earning about $60 per month, we can and do hold this judgment not excessive; and, so holding, and finding no error in the remaining assignments of error, the judgment is affirmed.

All the Justices concur.