**Manuel SCIORTINO, Appellant,**

v.

**Edwin E. MacGEE, M.D., Charles Keith Whittaker, M.D., and Charles A. Clough, M.D., and Drs. Whittaker, MacGee and Clough, Inc., Respondents.**

**No. WD 32019.**

Missouri Court of Appeals, Western District.

March 9, 1982.

Motion for Rehearing and/or Transfer to the Supreme Court Overruled and Denied May 4, 1982.

Application to Transfer Denied June 14, 1982.

Kenneth I. Grissinger, Kansas City, for appellant.

Martin J. Purcell, Daniel L. Fowler, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, for respondents.

Before SOMERVILLE, C. J., Presiding, and WASSERSTROM and KENNEDY, JJ.

WASSERSTROM, Judge.

This suit was initiated by Frances Sciortino by her guardian against Dr. MacGee, his two associates and their professional corporation for alleged medical malpractice in a brain operation to correct an aneurysm. Frances Sciortino died after filing suit, and her surviving husband Manuel Sciortino filed an amended petition under the wrongful death statute. Defendants filed motion to interplead the husband Manuel and the deceased's personal representative in order to obtain a determination as to whether the injuries suffered by reason of the operation caused the death. The Court found that death did so result. Thereupon, the cause was dismissed as to the personal representative, and the case was tried and submitted to a jury as a wrongful death claim. The jury returned a verdict for all defendants, and plaintiff appeals.

Plaintiff submitted his case to the jury on the hypotheses that MacGee either failed to secure an informed consent from the deceased to the operation or that he failed to be prepared to deal with a premature rupture of the aneurysm.[1] Defendants argue in this court that their motion for directed verdict should have been granted for the reason that there was no substantial evi-

---

1. The specific contentions in the latter respect were that MacGee operated alone without the presence of an assistant surgeon and that he did not put slings on the carotid artery of the neck to control bleeding should that occur. Bleeding did in fact occur by reason of premature rupture of the aneurysm, and the patient lost 1500 cc of blood.

dence to support either of those two hypotheses. It is unnecessary to rule upon that argument because, even assuming that plaintiff made a submissible case, nevertheless we conclude that the judgment should be affirmed on the ground that none of the points upon which plaintiff relies has merit.

## I.

The evidence shows that an instrument nurse Carmichael employed by defendants was present at the operation. Defendants did not produce Carmichael as a witness, and plaintiff's counsel attempted to argue to the jury that they should draw an adverse inference against defendants from that fact. Objection to that argument was sustained, and plaintiff now claims that ruling to be error.

■ Before any adverse inference can be drawn from the failure of a party to call a witness, the party attempting to argue such inference must show that the missing witness had knowledge of pertinent facts and was qualified to testify concerning the facts in issue. *Goodman v. Firmin Desloge Hospital*, 540 S.W.2d 907 (Mo.App.1976); *Gridley v. Johnson*, 476 S.W.2d 475 (Mo. 1972). Plaintiff made no such showing with respect to Carmichael.

There were two factual issues for the jury. As to the first of these, the question of consent, there is no showing whatever that Carmichael was present at any discussion between MacGee and the deceased. As to the second factual issue, whether MacGee was adequately prepared to deal with a premature bursting of the aneurysm, Carmichael was not shown to have any professional expertise sufficient to pass judgment concerning the applicable surgical standards. The only matters as to which Carmichael could have testified concern the events which transpired in the surgery room, and in those respects there were no disputes. Inasmuch as Carmichael could

not have testified as to any material matter, defendants' failure to call her as a witness did not give rise to any adverse inference. Plaintiff's first point is therefore overruled.

## II.

■ Plaintiff next complains that he was not permitted to argue an adverse inference with respect to the testimony of Dr. Clough. Defendant Clough took the stand as a witness, but plaintiff's attorney undertook no cross-examination. He did introduce portions of Clough's deposition as admissions against interest. Then in the course of argument to the jury, plaintiff's counsel proceeded as follows: "It is not what he said, it's what he would not say. He would not say that he or Whittaker operated on aneurysms without an associate or assistant." Defendants objected that this comment was beyond the evidence, and the objection was sustained.[2]

Defendants' objection was properly sustained. No one can know what Clough would or would not have said with respect to the manner in which he and Whittaker conducted operations in the absence of any question put to him on that score. Perhaps some different form of argument might have been properly formulated by plaintiff's counsel with respect to this matter, but that is purely hypothetical and we intimate no judgment in that regard. It suffices to say that the actual argument here attempted by plaintiff's counsel was objectionable.

Moreover, MacGee testified that both Clough and Whittaker routinely conducted microscopic surgery alone. Clough's testimony to the same effect would have been merely cumulative. The absence of that testimony by him therefore would not warrant an unfavorable inference. *Russell v. St. Louis Public Service Co.*, 251 S.W.2d 595 (Mo.1952).

**2.** Plaintiff's Points Relied On also sets forth two additional matters concerning absence of testimony from defendant Clough as to which plaintiff contends he should have been permitted to argue an adverse inference. However,

neither of these latter two items relate to the claims of negligence which were submitted to the jury. Any testimony on those matters therefore would have been immaterial.

Plaintiff's second point is therefore overruled.

## III.

Plaintiff's points III and IV can best be considered together. Both of those points complain of the submission of the issue of causation to the jury. Instruction No. 4, plaintiff's verdict director, hypothesized two grounds of negligence, required the jury to find that MacGee was negligent in one or more of those respects, and then required the jury to find that "as a direct result of such negligence, Frances Sciortino died." Instruction No. 5 was defendants' converse which directed a verdict for the defendants unless the jury believed that MacGee was negligent "and that as a direct result of such negligence, Frances Sciortino died."

As the premise for his present argument, plaintiff points to the ruling by the trial judge permitting Manuel Sciortino, rather than the personal representative of Frances Sciortino, to pursue this claim for damages. Plaintiff's theory is that the ruling mentioned eliminated any question of causation. Not so. The ruling mentioned decided only that death resulted from the operation, not that death resulted from any negligence. The precise ruling by the court on this matter was: "The Court finds the cause of death of Frances Sciortino resulted from partial paralysis resulting from the craniotomy as stated in the certificate of death." In explanation of that ruling, the court further stated, "the Court did not determine that the negligence caused the death."

■■■ It would therefore seem entirely proper for the jury to be instructed to find whether negligence was the cause of death. But however that may be, plaintiff cannot be heard to complain of the jury being so instructed. Instruction No. 4 was his own instruction, and a party may not be heard to complain of an instruction offered by him and given at his request. *State ex rel. St. Hwy. C. v. Nickerson & Nickerson, Inc.,* 494 S.W.2d 344 (Mo.1973); *Parsons Construction Co. v. Missouri Public Serv. Co.,* 425 S.W.2d 166 (Mo.1968). Nor may plaintiff complain of Instruction No. 5 which was an exact converse of his own verdict director. Plaintiff may not complain of a theory of law he himself adopted, and error if any was invited. *Arbuthnot v. Charlton,* 512 S.W.2d 464 (Mo.App.1974).

Plaintiff's points III and IV are therefore overruled.

## IV.

■■ Plaintiff next complains of Instruction No. 6 which defined the term "negligence." That instruction follows MAI 11.06 exactly and was not erroneous. Anyway, plaintiff cannot complain because he himself offered this instruction. *State ex rel. St. Hwy. C. v. Nickerson & Nickerson, Inc., supra; Parsons Construction Co. v. Missouri Public Serv. Co., supra.*

Plaintiff's point V is therefore overruled.

## V.

■■ Plaintiff next complains of Instruction No. 8 which withdrew from the jury's consideration any evidence of Frances Sciortino's pain and suffering. Any possible error in this regard is harmless in view of the fact that the jury returned a verdict for all defendants and therefore never reached the issue of damages. In his brief to this court, plaintiff "concedes that under *Gardner v. McGee,* 505 S.W.2d [452] 453 [Mo.App.], the instant withdrawal instruction would be harmless error. . . ."

Plaintiff's point VI is overruled.

## VI.

■■ Plaintiff next complains that he was erroneously prevented from introducing into evidence plaintiff's Exhibit No. 10, a report by Dr. Meyers. Dr. Meyers was plaintiff's expert witness whose name was disclosed and a copy of his report delivered to defendants as part of pretrial discovery. His deposition was taken by defendants in Panama, at which time Dr. Meyers was examined searchingly concerning his report as to the Sciortino operation and the question of professional liability arising out of

that operation. Plaintiff's lawyer was present, had full opportunity to examine the witness, and in fact did so. In the course of the examination, numerous references were made to Dr. Meyers' report, but neither party actually offered the report into evidence.

At the time of trial, plaintiff did not produce Dr. Meyers as a witness, but did read the Meyers' deposition in extenso to the jury. Then plaintiff attempted to read certain portions of the report to the jury. Objections were made and sustained. Then plaintiff offered the entire report into evidence. Objection was again made and sustained. These rulings are cited by plaintiff as error.

He argues that defendants used the report as the basis for examining Dr. Meyers on deposition, and that therefore plaintiff should be permitted to read any other portion of the report under the doctrine of "verbal completeness." However that doctrine is not applicable, since defendants did not offer the report or any portion thereof into evidence. The doctrine referred to is not called into play simply because some document, not entered into evidence, is referred to in the course of examining a witness. *San Bois Coal Co. v. Resetz*, 43 Okl. 384, 143 P. 46 (1914).

Plaintiff also makes much of the fact that the Meyers' report is physically bound into the deposition which was entered into evidence and used at the trial. There is no showing by what authority the deposition reporter included the report as a physical part of the deposition. For all that the record in this court shows, the reporter simply took that responsibility onto himself without any direction to do so from either lawyer.

Even if it could be assumed that there was some express or implied understanding between the lawyers that the report should be considered part of the deposition, nevertheless the rulings by the trial judge excluding the report was not reversible error. All the pertinent portions of the report had already been discussed in the deposition as read to the jury. Introduction of the report

itself and reading of it to the jury would have been purely cumulative, and the repetition of the same matter again to the jury could have constituted undue emphasis. A close comparison of the report with the deposition as read to the jury shows that virtually everything in the report had been well covered by the deposition itself, and to the minor extent that the report contained any statements not covered by the deposition, those additional statements were irrelevant to any issue submitted to the jury. Exclusion of the report did not materially affect the merits of the action and was therefore harmless. *Coffman v. Faulkner*, 591 S.W.2d 23 (Mo.App.1980); *Aiple v. South Side National Bank in St. Louis*, 442 S.W.2d 145 (Mo.App.1969); Section 512.-160–2, RSMo 1978; Rule 84.13(b).

Plaintiff's point VII is therefore overruled.

### VII.

■ For his final point plaintiff complains that the court did not permit him to use plaintiff's Exhibit No. 20 for the purpose of cross-examining defendant MacGee. Exhibit 20 is a chart prepared by plaintiff's counsel setting forth his analysis in numerical order of the successive steps in the surgery as described in the hospital records. This included a certain amount of interpretation on the part of plaintiff's counsel; for example, the following appears as a separate line on the chart: "No indication MacGee interpreted x-ray."

Permission for the use of the chart in question lay within the sound discretion of the trial court. *Wilkins v. Cash Register Service Company*, 518 S.W.2d 736 (Mo.App. 1975); 3 Jones on Evidence 5 (1972). No abuse of that discretion appears. Plaintiff's point VIII is therefore overruled.

The judgment is affirmed.

All concur.