ALEXANDER DOYLE *vs.* PEERLESS MOTOR CAR COMPANY OF
NEW ENGLAND.

Suffolk.    March 5, 1917.—May 23, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Bailment. Conversion. Motor Vehicle. Agency,* Existence of relation, Scope
of authority. *Parent and Child.*

If the owner of a motor car leaves it at a garage for repairs, the proprietor of the
garage engages, whether the repairs are or are not made, to return it to the
owner or to deliver it to some third person with the owner's express or implied
consent.

If the proprietor of the garage delivers the motor car which was left with him
for repairs to some one who was not authorized by the owner to receive it, he
is liable to the owner in an action of tort for conversion.

In such an action, neither a sincere and apparently well founded belief that the
tortious act was right nor the exercise of any degree of care on the defendant's
part in reaching such a belief constitutes a defence.

In an action of tort by the owner of a motor car against the proprietor of a garage
for conversion of the car, there was evidence tending to show that the plaintiff
had left the car with the defendant for repairs and had gone into another State
for a summer vacation; that there was some correspondence between them as
to the extent of repairs that should be made; that during the correspondence
and before final arrangements as to the extent of the repairs had been made,
a chauffeur who had been employed by the plaintiff to run the car went to the
garage and, without express authority from the plaintiff, procured its delivery
to himself and later, while using it on a frolic of his own, destroyed it. The
defendant relied in defence upon evidence of a custom that, in the absence of
orders to the contrary, delivery of the car to the owner's chauffeur constituted
delivery to the owner. The defendant's manager testified that, under the con-
ditions above described, the custom would not apply. The judge left to the jury
the question whether, if there were such a custom, it applied under the circum-
stances found by them to exist. The jury returned a verdict for the plaintiff.
*Held,* that the action of the judge was right.

A universal custom among proprietors of garages and owners of motor cars employ-
ing chauffeurs, to allow a chauffeur, who brings a car into a garage to be kept
for the owner, to take the car out again without an express order from the
owner who has given no instructions to the contrary, may be found not to be
applicable where the owner delivers the car at the garage to be retained for an
appreciable length of time for the sole purpose of ascertaining the extent and
cost of repairs desired by the owner.

At the trial of the above described action, it was not error for the judge to instruct
the jury that, if the plaintiff caused his motor car to be delivered to the defend-
ant by his chauffeur, and if after such delivery the plaintiff notified the defendant
that he had placed his car in its possession for a special purpose, such notice

was equivalent to a notice not to deliver the car to the chauffeur or to any person until such special purpose had been accomplished or until the plaintiff specifically had ordered the redelivery.

The bare relationship of father and daughter (especially where the daughter is married and is not a member of her father's family) does not constitute the daughter an agent of the father authorized to receive the father's motor car from a garage where he had placed it for repairs.

TORT for conversion of a motor car. Writ dated September 19, 1913.

In the Superior Court the action was tried before *King*, J. There was evidence tending to show that the motor car was purchased by the plaintiff as a used car from the defendant in the autumn of 1912; that at the time of delivery there still was some work to be done upon it by the defendant to put it into condition; that the plaintiff, being in haste to use the car, did not wait for that work to be done, arranging to bring the car back at his convenience, when the defendant would do the things that it had agreed to do.

In June, 1913, the plaintiff went to Maine for his vacation and on June 16 wrote to the defendant a letter, the material portions of which were as follows: "I have instructed my chauffeur to deliver to you my six 48 Peerless T. C. for overhauling. I have told him to tell you what in his estimation should be done to it but before doing anything, I wish you to examine it thoroughly and report to me here any work to be done for which you propose to charge. `. . . I don't know anything it needs now that you wouldn't have had to do then, but if there is something, I want to know it and the cost, before you go ahead." The plaintiff's chauffeur, one Green, accordingly delivered the car to the defendant.

The defendant replied to the foregoing letter on June 19, in part as follows: "Answering your letter of the 16th; we have had your car tested out, and submit you a list of the work which we are to charge you for. This work will cost from $650.00 to $700.00. [Here followed a long list of work for which a charge would be made and another list of two items for which no charge would be made.] If you desire the work which we are to charge you for to be done will you kindly notify us at once."

The plaintiff replied with a long letter of protest on June 20, the closing paragraph of which was as follows: "I don't see how

even the full list of things you send could cost anything like $650 or $700 and I will ask you to report to me again, before doing any work to be charged to me."

The defendant did not answer the plaintiff's letter of June 20 and on June 28 the plaintiff wrote again asking for a reply.

On June 30 the defendant dictated a letter to the plaintiff which was dated July 1, and in which it stated that its agreement with the plaintiff did not require it to make the repairs listed in its previous letter as to be paid for by the plaintiff. The letter also contained the following statements: "We received a telephone call from your chauffeur this morning asking for the car for Miss Doyle, your daughter, saying that she desired to use it for a week or so. He stated that the valve caps were leaking, and that he was unable to keep the wires in the wire bar that run from the magneto, and decided that these were too short. We have had this remedied without charge to you; also have put in the lamps and changed the wind shield brackets; this is fulfilment of agreement as per agreement."

On June 30 the plaintiff's chauffeur, who was well known at the defendant's garage as the plaintiff's chauffeur, as he had been in the plaintiff's employ as chauffeur for about three years, had telephoned to the garage and had inquired if the car was in condition to be taken out. He was informed by the foreman that it was and was told that he could have it. Nothing was said to the chauffeur about the necessity of bringing an order from any one for the delivery and he said nothing about bringing one. The foreman of the defendant's garage who had held the telephone conversation with the chauffeur talked with the superintendent of the defendant and told him of the chauffeur's request and asked if the car was ready for delivery. He was told that it was ready and that delivery could be made the next day. The superintendent said nothing to the foreman about any necessity for an order from any one authorizing a delivery. In the ordinary course of business at the defendant's garage when a chauffeur came in with an order for a car the order would be referred to the superintendent before the car was delivered.

The next day the chauffeur called at the garage for the plaintiff's automobile and brought with him an order in writing signed by the plaintiff's daughter, Mrs. Shadman, directing that the car be

delivered to Green, the chauffeur. The superintendent, without inquiry as to the order, merely asked if it was the plaintiff's chauffeur, and, when the foreman informed him that it was, he directed delivery of the car. Green took the car from the defendant's garage to Mrs. Shadman's garage on July 1 and it remained there until July 4, Mrs. Shadman and her husband using it on July 3. On July 4 it was destroyed while the chauffeur and some of his personal friends were on a "joy ride" and the chauffeur himself met his death in the accident.

Other material evidence is described in the opinion.

At the close of the evidence, the defendant asked for, and the judge refused, the following rulings:

"1. On all the evidence the plaintiff is not entitled to recover.

"2. If the defendant delivered the plaintiff's automobile to a chauffeur employed by the plaintiff, then the plaintiff is not entitled to recover.

"3. The defendant delivered the plaintiff's automobile to the plaintiff's chauffeur. Said chauffeur was the plaintiff's agent, and in the absence of evidence to the contrary had all the authority usually possessed by chauffeurs, including the authority to take the plaintiff's car from the defendant's garage."

"6. If, by the custom of the automobile business, chauffeurs generally are regarded as agents with authority to deliver and to take out automobiles of their employers, then, in the absence of· notice from the plaintiff that the plaintiff's chauffeur did not have authority to take out the plaintiff's automobile, the defendant was justified in delivering the automobile to the plaintiff's chauffeur and the defendant is not liable.

"7. The defendant was a bailee of the plaintiff's automobile. In order to recover the plaintiff must show a lack of ordinary care on the part of the defendant in allowing the plaintiff's automobile to be taken from the garage and must show further that said lack of ordinary care was the primary cause of the accident which thereafter happened to the plaintiff's automobile."

"9. If the plaintiff was in the habit of lending his car to his daughter and the defendant delivered the car to the plaintiff's chauffeur on the written order of the plaintiff's daughter, then this defendant cannot be held liable and the plaintiff is not entitled to recover.

"10. If the defendant delivered the car to the plaintiff's chauffeur and said chauffeur thereafter placed the car in the garage of Mrs. Shadman, the plaintiff's daughter, to whom the plaintiff had formerly loaned his car during the summer, then the plaintiff is not entitled to recover."

"12. The plaintiff's evidence to the effect that he had previously given a written order to his chauffeur for the purpose of having the same delivered to the defendant should be disregarded by the jury because there is no evidence that said order was ever delivered by said chauffeur to the defendant."

"14. It appearing from the undisputed evidence that the plaintiff's car was delivered by the plaintiff's chauffeur to the plaintiff's daughter and that the plaintiff's daughter subsequently to the delivery of said car to the plaintiff's daughter [allowed it to be taken by the plaintiff's chauffeur], in whose possession it was at the time of the accident, the defendant's original delivery to the plaintiff's chauffeur cannot, as matter of law, be held to be the proximate cause of the injury or destruction of the plaintiff's car, and the defendant is not liable.

"15. In order to recover the plaintiff must prove that the defendant negligently delivered the plaintiff's car to the plaintiff's chauffeur and that said negligent delivery was the proximate cause of the destruction or damage to the plaintiff's car. If the plaintiff's car after being taken from the defendant's garage by the plaintiff's chauffeur was delivered to the plaintiff's daughter and was subsequently by the plaintiff's daughter delivered to or allowed to be taken by the plaintiff's chauffeur and was then injured or destroyed, the original delivery by the defendant to the plaintiff's chauffeur cannot, as a matter of law, be held to be the proximate cause of the injury or destruction of the plaintiff's automobile."

Subject to exceptions by the defendant, the judge gave the following instructions, asked for by the plaintiff:

"I rule as number three, — Neither a sincere and apparently well founded belief that such a delivery (that means such a delivery as was in fact made) was right, nor the exercise of any degree of care in reaching such a belief, constitute any defence to the liability which such delivery creates.

"That is, it is not a question of the plaintiff's good faith in this case, or the defendant's good faith in this case, in my judgment. It

is a matter of legal right. So far as I know, and I think so far as you know, it may be said perhaps that both parties acted in good faith in the matter. At least I recollect no testimony impeaching the faith of either party; they are standing on their rights. Who shall be responsible for this loss caused by the wrongful act of the chauffeur? Where shall it fall? Each is trying, of course, to put it on the other; that is human nature."

"I give the plaintiff's number four. It is not a defence to the plaintiff's right to recover for the delivery of his automobile to a person not in fact authorized by him to receive it, that such person apparently had such right."

"I will give the first part of your [the plaintiff's] sixth. If the plaintiff caused his automobile to be delivered to the defendant by his chauffeur, and if after such delivery the plaintiff notified the defendant that he had placed his automobile in its possession for a special purpose (meaning thereby, as I suppose, to be repaired, to have work done upon it) such notice is equivalent to a notice not to deliver the automobile to the chauffeur or to any person until such special purpose had been accomplished or until the plaintiff specially ordered the re-delivery.

"That is, they say this correspondence is notice to them that this car was delivered to you to do some work upon it, keep it until you do it or we reach an agreement, but of course that is to be taken in connection with the fact that it was competent for the plaintiff personally or by any duly authorized agent to countermand that, to change it; to say, give me up my car, I am not going to have it done, you are going to charge too much for the work; but that correspondence in and of itself does tend to show that there was under consideration special work to be done, the car wasn't to be delivered up until that was done or some new arrangement made some modification."

The portion of the charge, to which the defendant excepted as stated in the opinion, which dealt with the relationship of father and daughter, was as follows:

"I must say to you, I think, that simply because of the relationship of Mrs. Shadman to her father, it is no evidence whatever that the daughter was agent for the father to receive that automobile or to order its delivery to her or to any one else. I think that would appear clear to you, but let me push that inquiry

perhaps a little bit further. Mind you, that in this case the daughter wasn't even living with her father, wasn't a member of his family. If the daughter had been a member of his family, then you might say that an automobile kept by the father might be presumed to be for the use of the wife and the children, the daughter, the other members of the family, and that the act of the daughter in taking an automobile of her father's out of his garage and using it was his act because a member of the family. You might assume, perhaps, in that case that the father understood that every member of his family living with him could use it. Upon the contrary, you could not assume from that relation alone that a daughter living apart from her father, married and having a home of her own, you could not assume from that mere relationship that there was any agency whatever upon the part of the daughter, or that she had any legal right to take that car, or to order it taken at any place, to withdraw it from the defendant's possession and take it to her own possession. The father, and he alone, had the power to determine that, if he was the owner, and it is of no consequence whether the daughter thought, because she was a daughter and because her father was in Maine, that she perhaps had the right; that is of no consequence. If she didn't have the right, the mere fact that she thought so and acted in good faith, is absolutely of no consequence to you, gentlemen."

There was a verdict for the plaintiff in the sum of $2,300; and the defendant alleged exceptions.

*G. W. Anderson,* for the defendant.

*T. W. Proctor,* for the plaintiff.

BRALEY, J.  The defendant on delivery and acceptance of the car, as the jury could find, for the purpose of making repairs when their extent and nature had been ascertained and the order had been given by the plaintiff and owner, engaged, whether the repairs were or were not made, to return the car or to deliver it to some third person with the owner's express or implied consent. *Castle* v. *Mayer,* 217 Mass. 38. *Stevens* v. *Stewart-Warner Speedometer Corp.* 223 Mass. 44. *Fingold* v. *Schacter,* 223 Mass. 274. "And a delivery to an unauthorized person is as much a conversion as would be a sale of the property, or an appropriation of it to the bailee's own use. In such cases neither a sincere and

apparently well founded belief that the tortious act was right, nor the exercise of any degree of care in reaching such a belief, constitutes a defence even to a gratuitous bailee." *Murray* v. *Postal Telegraph-Cable Co.* 210 Mass. 188, 195. If not expressly conceded, the uncontradicted evidence would have warranted the jury in finding, that on the presentation of an order signed by the plaintiff's daughter, the defendant delivered physical possession of the car to the plaintiff's chauffeur, by whom as they could find, it was subsequently wrecked while being used by him on a "frolic of his own." It is also plain that, if they believed his evidence and the evidence of the daughter, as they manifestly did as shown by the verdict returned in his favor, the plaintiff never had expressly or impliedly authorized or consented to the order or to the delivery, and the justification pleaded in the third paragraph of the answer failed.

But under the general denial and the third paragraph the defendant relied on a universal custom, of which it offered evidence, that in the absence of orders to the contrary from the owner, delivery of a car to the owner's chauffeur constituted delivery to the owner. Where such conditions appear the presumption is that both parties know of it and contract accordingly. The question however is an issue of fact for the jury under suitable instructions. *Barrie* v. *Quinby*, 206 Mass. 259, 265, and cases cited. The jury under instructions which were full and appropriate could find on the contents of the letters and the inferences properly to be drawn therefrom, that negotiations were pending concerning such repairs as the defendant deemed necessary, but which by reason of the estimated cost the plaintiff had not as yet ordered, and that until the arrangements were completed the plaintiff, who during the entire period was at his summer home in another State, did not intend that the car should be redelivered or used. And the defendant's manager testified in cross-examination that under such conditions the custom was inapplicable.

A custom to allow a chauffeur who brings a car into a garage to be kept for the owner to take it out again without an order from the owner who has given no instructions to the contrary, the jury could say on the manager's evidence, formed no part of the bailment where the car by the owner's directions is to be retained for an appreciable length of time for the sole purpose of ascertaining the extent and cost of necessary repairs. The distinction is

obvious between the ordinary use and operation of a car in commission, and a car left for more or less extensive repairs to be fixed by agreement with the owner after an examination. The object of the bailment ordinarily would be frustrated if the chauffeur solely by reason of his employment could immediately regain possession and use of the car.

The defendant's first request that on all the evidence the plaintiff is not entitled to recover could not have been given. It was a question of fact whether delivery to the chauffeur was authorized, and as the "authority usually possessed by chauffeurs" could not be assumed as matter of law, the second and third requests were denied rightly. The sixth request is amply covered by the instructions. As to the ninth request, the question whether the plaintiff during his absence in the summer intended that his daughter should have the use of the car depended on the evidence. If the jury believed her statements, there was no proof of a "habit," and whether under her written order the car was delivered to the chauffeur as her servant or agent was submitted under accurate and impartial instructions. Nor could the tenth request have been given. It assumed that delivery to the chauffeur would be a valid delivery; an issue the jury were to decide on the entire evidence. The seventh request requires no comment as it has not been argued.

It is stated in the brief of defendant's counsel, that "There are, it is submitted, other exceptions, perfectly good, which should be sustained; among others to the court's refusal to give the 12th, 14th and 15th requests . . . also to the exclusion of evidence offered. . . ." But an examination of these exceptions reveals no reversible error of law. See *Fay* v. *Hunt*, 190 Mass. 378; *Swain* v. *Boston Elevated Railway*, 188 Mass. 405.

The plaintiff's third and fourth requests, to the giving of which the defendant also excepted, were appropriate statements of the law for reasons previously stated. In giving a portion of the plaintiff's sixth request in a modified form no error is shown. The instructions were only a repetition of previous instructions concerning the nature of the bailment in connection with the question of delivery. *Conners Brothers Co.* v. *Sullivan*, 220 Mass. 600, 607. The judge after carefully directing their attention to the evidence showing the custom on which the defendant relied, and stating

as matter of law that if they found the custom existed then the plaintiff made the bailment with knowledge of its existence, left to them the question of whether in reliance on the custom delivery was actually made to the chauffeur as the plaintiff's servant. *Peabody* v. *Haverhill, Georgetown & Danvers Street Railway,* 200 Mass. 277, 280, and cases cited.

The defendant's exceptions to "that part of the charge in which the judge" dealt with the relationship of father and daughter, and "to the entire part of the charge in which the judge" said if the car was delivered to the chauffeur "for the daughter, evidence of custom was immaterial," must be overruled. The instructions were appropriate and unexceptionable. It was correctly said in substance that the bare relationship did not make her an agent of the plaintiff to receive or control the delivery of the car, although, as alternatively averred in the answer, if the jury found that delivery was made to the chauffeur not as the plaintiff's servant or agent but as the agent of the daughter under the order, there was a conversion unless her act was authorized by the plaintiff.

We have considered all the questions presented in argument, and finding no errors the exceptions should be overruled.

*So ordered.*