*Southern District*

## TABOR SCHOOL CAMP, INC.

v.

## NORFOLK HUNT CLUB

*Present*: Nash, P. J. & Murphy, J.

Case tried to *Cox, J.* in the District Court of Northern Norfolk. No. 49968.

*Murphy, J.* This is an action of tort to recover the value of a horse known as "Rise-N Shine," belonging to the plaintiff which it says the

defendant converted to its own use. The answer is a general denial.

*At the trial there was evidence to show that* the plaintiff owned a summer riding camp for girls and maintained horses for that purpose; one of the horses owned by it in 1962 was called "Rise-N Shine." The plaintiff and defendant agreed the defendant might lease the horse "Rise-N Shine" for use as a drag pony during the off season.

The function of a drag pony is to serve as mount for a rider who drags a scented bag over a course for hounds to follow in the sport of draghunting. A drag pony sometimes must jump. The draghunting season is autumn, ending in mid-December or earlier, and lasts for about a month in the spring. These facts were known to Mr. Browder. Mr. Clark gave Mr. Browder to understand that the horse would be kept during the draghunting season *at the Norfolk Hunt Stable*. This is a boarding stable not operated by the Norfolk Hunt Club.

The agreement was signed by William H. Potter, Jr., Treasurer for the defendant. The body of this agreement is a mimeographed form, prepared by the plaintiff and regularly used by it in the leasing of its horses.

The horse was delivered about September 1, and was placed in the Norfolk Hunt Stable where it remained until December, 1962, when the defendant transferred it to the riding stable of Dana Hall School. The

defendant did not inform the plaintiff of such transfer.

Dana Hall School is a school for girls, having a riding department with a well equipped stable and an indoor ring for winter riding. The riding department and stable is under the direction of Captain Fred Marsman, an experienced professional who has for many years directed riding at Dana Hall in the winter and at a large riding camp for girls in the summer. The understanding between the defendant and Dana Hall School, as represented by Captain Marsman, was that the School should care for and board the horse and might use the horse for riding by its pupils, paying no cash consideration, and should return the horse in time for the commencement of the defendant's draghunting season in April, 1963. While at the Dana Hall Stable the horse received excellent care and was ridden by pupils under Captain Marsman's supervision.

The horse put on weight and appeared to be in excellent health through March 4, 1963. On the morning of March 5 it was found to be ill and a veterinary was immediately called and treated it. The horse died that afternoon. An autopsy was performed and the cause of death diagnosed as a disease called "Colitis X". On March 5 or 6 the defendant informed Mr. Browder of the death of the horse, who then learned for the first time that it had been at Dana Hall School.

The court made the following special findings:

"The plaintiff caused to be delivered to the defendant its horse "Rise-N Shine" on or about September 1, 1962 under a contract of bailment for hire. Without the plaintiff's consent or knowledge the defendant delivered said horse to Dana Hall School in December 1962. While the horse was at Dana Hall School it was used for riding. The horse died at said school on or about March 5, 1963. The delivery of the horse to Dana Hall School was not authorized by the plaintiff."

The court held the defendant to be liable for the conversion of the horse, found for the plaintiff, and assessed damages in the sum of $3,000.00 with interest from the date of the writ.

At the close of the evidence, the defendant filed the following requests for rulings:

"1. The defendant is not liable to the plaintiff under the declaration in this case by reason of its failure to return the horse due to the death thereof unless the defendant substantially violated the terms of the lease of the horse.

2. The defendant as a lessee of the horse had a right to keep and use it, or to cause it to be kept and used, in any proper way, at any proper place, and by any proper person during the term

of the lease, unless otherwise agreed expressly or by clear implication.

3. There was no agreement, express or implied, between the parties limiting the defendant's right as lessee to keep and use the horse or to cause it to be kept and used, in any proper way, at any proper place, and by any proper person during the term of the lease.

4. It was not a violation of the conditions of the lease of the horse to cause it to be kept at the riding school of Dana Hall School and used there as a school horse under the supervision of Captain Fred Marsman.

5. There was no evidence that the defendant converted the plaintiff's horse.

The court made the following rulings on the defendant's requests for rulings:

1. and 3. Denied. The defendant was not authorized, and had no right, to deliver the horse to Dana Hall School.

2. Allowed as a correct statement of law but not applicable to the facts found.

4. Denied as not in accordance with findings.

5. Denied.

The court, at the request of the plaintiff, made the following rulings:

1. On all the evidence the plaintiff is entitled to recover.

2. The defendant was a bailee of the

plaintiff's horse, "Rise-N Shine" under a written agreement.

3. Denied.

4. Delivery of property by a bailee to another without the knowledge or consent of the owner is a conversion.

5. Delivery of property by a bailee to a person not authorized by the owner is itself a conversion rendering the bailee liable to the owner without regard to the question of due care.

6. Delivery of the plaintiff's horse, "Rise-N Shine," by the defendant to Dana Hall School without the knowledge or consent of the plaintiff constitutes conversion of the plaintiff's horse, "Rise-N Shine."

7. Delivery of the plaintiff's horse, "Rise-N Shine," by the defendant to Dana Hall School without the knowledge or consent of the plaintiff is itself a conversion of the horse rendering the defendant liable without regard to the question of due care or negligence.

8. Delivery of the plaintiff's horse, "Rise-N Shine," by the defendant to Dana Hall School without the knowledge or consent of the plaintiff, which resulted in the horse's death, makes the defendant liable to the plaintiff for the fair value of the horse.

9. If the defendant converted the plaintiff's horse, "Rise-N Shine," it is liable for the fair value of thereof.

The defendant claims to be aggrieved by the court's failure to give defendant's requests for rulings numbered 1 through 5 as set forth above, by the court's ruling given at the request of the plaintiff numbered 1, 4, 5, 6, 7, and 8, and by the court's findings that the delivery of the horse to Dana Hall *school* was not consented to and not authorized by the plaintiff (if and to the extent that these findings are meant to exclude implied consent in law as well as express consent).

The substantial question presented here is *first,* did the written agreement give the defendant the right to deliver the horse to Dana Hall School? The trial judge found as a fact it did not. *Secondly,* was such delivery without the knowledge or consent of the plaintiff a conversion of the horse?

The pertinent language relative to the possession, care, and responsibility of the horse in the lease as follows:

> "*Norfolk Hunt Club* is to *board* and be *fully responsible* in *every* way, . . . . for the horse, 'Rise-N Shine' from September 1, 1962 until June 15, 1963. This *responsibility* includes food, shoeing, veterinarians, and taxes. *It* is to give this horse excellent treatment and care; feed, water, and care for the horse at least twice a day." (emphasis supplied)

The foregoing language clearly indicates that the plaintiff was relying upon the defendant, Norfolk Hunt Club, to be solely responsible for the horse.

Moreover, the contract further provides that "If Norfolk Hunt Club should return the horse for any reason before June 15, 1963," a certain minimum charge will be made less a credit for amount already paid. Such language implies that the horse cannot go elsewhere than back to the plaintiff. Therefore, the terms of the written contract did not permit or authorize the defendant to deliver the plaintiff's horse to Dana Hall School, and such delivery amounts to a conversion and the trial judge so found.

The findings of the trial judge must be sustained if warranted in law upon any possible view of the evidence, and the legitimate inferences therefrom. *Moss v. Old Colony Tr. Co.,* 246 Mass. 139.

The defendant in his brief cites *Rourke v. Cadillac Automobile Co.,* 268 Mass. 1. In that case the question was whether the bailee of a car, left with it to be repaired and painted, was liable for the loss of the car in a fire not due to negligence, in another establishment to which it had sent the car for painting, and the court held there was no wrongful assumption of control by allowing another person to do all or part of the work undertaken by the bailee.

That case is distinguishable from the case at bar. It concerns an inanimate object or property and refers to a single act or acts with respect to the use of that property, as do the other cases cited. The general rule still is i.e. "A bailee may give consent to

others to use the property unless such action is *contrary to the terms of the lease."*

The judge found as a fact in the instant case, the delivery of the horse was contrary to the terms of the lease, and further, the act to be performed in the instant case was *somewhat personal* in nature, in that it concerned a living animal, and the plaintiff relied on the personal confidence in the bailee as may be inferred by the language used in the agreement.

The fact that Dana Hall School happened to have an excellent riding department, which was well qualified from all of the evidence to give the type of care required for the horse is only incidental and of no import, and further the findings render this fact immaterial.

It is not a question of negligence or due care. *Blaisdell v. Hersum and Co., Inc.,* 233 Mass. 91.

The defendant contends that the cases cited by the plaintiff in his brief with respect to the right of the defendant to transfer the custody of the horse are irrelevant. We do not agree. All of these cases are directly in point since the judge found the defendant had no right or authority to deliver the custody of the horse to another. Therefore, the quote from the defendant's brief, "Delivery by the bailee to a person to whom the bailor has not authorized delivery constitutes a conversion." *Hall v. Boston and Worcester RR.,* 14 Allen 439; *Doyle v. Pearless Motor Co.,* 226 Mass.

561 and cases cited. Good faith is of no consequence. See *Doyle v. Pearless,* cited supra.

The defendant's request for rulings No. 1, 3, 4 and 5 were properly denied in view of the court's special findings, and No. 2, which was denied, was clearly inapplicable in view of those special findings.

We find no prejudicial error, and *judgment is to be entered for the plaintiff in the sum of $3,000.00 with interest from the date of the writ.*

William A. Cross, of Boston, for the Plaintiff.

Noel Morse, of Boston, for the Defendant.