GEORGE B. HASKELL *vs.* BOSTON DISTRICT MESSENGER
COMPANY.

Suffolk.    November 23, 1905. — January 4, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Negligence.    Carrier.    District Messenger Company.*

A corporation supplying messenger boys to be used in ordinary messenger service
and controlled by those calling for them is not a common carrier, and performs
its duty toward its customers by exercising ordinary care in the selection and
employment of suitable persons as messengers.

If in response to a signal from a call box a corporation supplying messenger boys
to carry messages and do errands furnishes a boy, who is sent by the person
calling for him with a receipted bill to collect rent and collects the rent and dis-
appears with it, and no special arrangement has been made with the company
in regard to the performance of this service, the employer of the boy can-
not recover the amount of his loss from the corporation supplying him, without
showing negligence on the part of the corporation in selecting the boy as a
messenger.

In an action against a corporation supplying messenger boys to carry messages
and do errands, for the loss of a sum of money stolen by a messenger supplied
by the defendant when sent by the plaintiff to collect rent, it is proper to ex-
clude evidence, offered by the plaintiff to show knowledge on the part of the
defendant that the employers of its messengers sometimes entrusted them with
money.

CONTRACT, with a count in tort, against a corporation, estab-
lished under the laws of the State of New Hampshire and having
a usual place of business in Boston, engaged in carrying on in
that city and its vicinity the business of supplying messengers
for hire, and alleged to be a common carrier of messages, pack-
ages, money and other things, alleging in the first count the loss
of $58.33 received from the plaintiff by a messenger furnished
by the defendant to whom the plaintiff entrusted a rent bill for
collection, and alleging in the second count the loss of the same
money through the negligence of the defendant in conducting its
business.    Writ dated October 24, 1902.

At the trial in the Superior Court before *Wait,* J. the facts
appeared which are stated in the opinion.    The evidence referred
to in the last paragraph of the opinion as properly excluded by
the judge was as follows:

One Johnson, called for the plaintiff, testified that he was in

the employ of the defendant about two years in 1897 and 1898 as a messenger; that he did various kinds of business, including depositing money in banks, drawing money, collecting rents and paying bills; that during the first two weeks of every month he would carry money for the plaintiff very often. The witness further testified that he collected money for other customers of the defendant and deposited money for them in banks.

On direct examination the witness was asked the following questions:

"Q. Now, I want to ask you a question that you need not answer until we see whether it is objectionable, and that is: During the period of time that you were in the employ of the defendant company, was it or was it not a matter of common talk and knowledge that messengers collected money in response to calls from the customers?

"Q. Was the collection of money by the messenger known to the officers or any of the managers of the company in the office?"

To each of these questions the defendant objected. The objections were sustained and the plaintiff excepted.

One Brothers, called for the plaintiff, testified that he entered the service of the defendant fourteen years ago, first a year as messenger, and then as clerk and branch office manager, and as collector for both the defendant company and the Postal Telegraph Company. The witness was asked this question:

"Q. At that time (when the witness was in charge of the messenger service at Atlantic Avenue in 1898), what did you know in respect to any habit or usage in respect to any messenger boys collecting money?" The defendant objected. The objection was sustained and the plaintiff excepted.

The witness was asked this question:

"Q. Was it a usual or an unusual occurrence for the messengers to carry money the last two years you were in the service of the company?" To which the witness answered, "Oh, it was the usual messenger service."

The witness then was asked, "Was it so regarded by the company?" To this question the defendant objected. The objection was sustained and the plaintiff excepted. The witness then was asked, "By the officers of the company?" To

this question the defendant's attorney objected.   The objection was sustained and the plaintiff excepted.

No notice was given by the company to the public that its messengers were not permitted to carry money for its patrons. Brothers testified that if there was any special or unusual service demanded by a customer he would confer with the superintendent of the company and obtain his approval before sending a messenger.

At the close of the evidence, the judge instructed the jury as follows: " In the view which I take of the law applicable to the evidence here, it seems to me that it is my duty to direct that you find a verdict for the defendant, on the ground that there is no liability for goods placed in the hands of a messenger; that the risk attending the loss of the goods belongs to the person who sends the goods and puts them in the hands of the messenger, and not upon the company which furnishes the messenger; and I will ask your foreman to sign a verdict."

In accordance with this direction the jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*W. A. Abbott,* for the plaintiff.

*R. F. Sturgis,* for the defendant.

KNOWLTON, C. J.   The defendant is a corporation, organized under the laws of New Hampshire for the purpose of " carrying on a general messenger business, leasing, operating, erecting and maintaining wires and fixtures for call boxes, telegraphs and other things relating to and useful in the receiving and transmitting and delivery of messages."   For many years it has had a general office and branch offices in the city of Boston, and has been engaged in the business of furnishing messengers for hire. The ordinary method of doing the business has been for the company to send a messenger in response to a call, and to send with him a printed slip, with blank spaces for filling in the " Time started," " Name," " Address," " Messenger occupied " (Time), " Expenses " (Paid), " Total," " Messenger detained " (Minutes), " By " (Name of person employing messenger).   There were other blanks to be filled, to show where the messenger was sent, by whom the message was received, where the answer was delivered, and by whom it was received.   An advertising pamphlet, issued by the defendant, gave the rates of charges for a messen-

ger between specified points in all parts of Boston, and also rates by the hour. At the bottom of one of its pages was a printed statement, "We employ bright, intelligent boys who are thoroughly experienced in messenger work." The rates stated are all without reference to the nature or importance of the work in which the particular messenger may be employed. The pamphlet contained numerous other advertising statements, all of which implied that the business done by the company was only in furnishing messengers for the service of others, except that at the bottom of one page there was this statement: "We deliver addressed circular work, bills, monthly statements, catalogues, calendars, etc. Get our prices." It also appeared that for several years, shortly before Christmas, the defendant had distributed a card, saying that it made a specialty of delivering Christmas presents. In carrying on its business the defendant employed boys fifteen or sixteen years of age.

The plaintiff signalled to the defendant for a messenger by means of a call box, and delivered to the messenger sent in response to his call, a receipted bill for rent, amounting to $58.33, and sent him to a tenant to collect it. The messenger collected the money and failed to return it. The question is whether there was any evidence at the trial which would warrant the jury in finding for the plaintiff for the amount of this money which he seeks to recover.

The plaintiff contends that the defendant acted as a common carrier in receiving the bill and undertaking to bring back the money. We find nothing in the evidence tending to show this. It undertook to furnish messengers to be used by its employers in any way in which messengers could properly be employed. If special and peculiar service was wanted special arrangements were to be made for it. In the ordinary conduct of its business the defendant did not assume any control of the work in which the messengers were to be employed, and usually had no knowledge of it until after it was completed. Even then it had no knowledge of the nature of the message delivered, or the particulars of the service. The employer was left to direct the messenger, to determine what he should do and how he should do it, subject only to an implied understanding that he should not be called upon to render service of a different kind from

that which can properly be performed by messengers.   In this service the messenger became, for the time, a servant of the employer, while he was still in the general service of the defendant.   *Linnehan* v. *Rollins*, 137 Mass. 123.   *Hasty* v. *Sears*, 157 Mass. 123.   *Samuelian* v. *American Tool & Machine Co.* 168 Mass. 12.   *Delory* v. *Blodgett*, 185 Mass. 126.

It was shown that messengers had often been entrusted with money and property by those who called them.   So far as appears, this was under the general arrangement already stated, which gave the defendant no knowledge nor any responsibility in regard to the way in which the messenger was used.   The evidence tended to show that some of the agents of the company, and perhaps the general manager of the company, knew that sometimes messengers were so used.   But this creates no liability for the money or property, so long as the messengers were furnished only to be used and controlled by the employer as he might choose.

What is the implied contract or duty of the defendant, growing out of this kind of business?   Does the defendant become a common carrier and insurer of everything entrusted to the messengers?   It seems quite plain that it does not.   It impliedly contracts that the messengers whom it furnishes are suitable and proper persons for the performance of the ordinary duties of messengers, so far as the exercise of ordinary care in the selection and employment of them will enable it to procure such persons. Its duty is not very unlike that of a stable keeper who furnishes a horse and carriage for the use of a hirer.   Because, for the proper performance of their duties, these messengers should be worthy of confidence, ordinary care in the selection of them requires that investigation should be made and precautions be taken to insure the exclusion of all unfit persons from this employment, and to secure persons of such mental and moral qualifications as render them trustworthy.   For a failure to take due precautions in these particulars the defendant may be held liable, either for negligence or upon an implied contract, to any person who suffers loss from the misconduct of a messenger whom it has furnished. In the present case there was no evidence of negligence of the defendant in this particular.

If, in the delivery of Christmas presents, or of bills, state-

ments, catalogues, etc. the defendant becomes a common carrier, it is liable as such. But that can be only by an arrangement different from that made with this plaintiff.

The exceptions in regard to the exclusion of evidence must be overruled. None of the testimony excluded had any tendency to show that the defendant became liable as a common carrier for money or property entrusted to messengers under ordinary arrangements like that made with the plaintiff. Mere knowledge that employers sometimes entrusted money to them, without any contract other than the usual one, under which the messenger is furnished to be used by the employer in the ordinary way, would not make the defendant liable for loss of money, through his dishonesty, unless there was a failure to use proper care in the selection of the messengers.

*Exceptions overruled.*