KATHERINE A. MURRAY *vs.* POSTAL TELEGRAPH-CABLE
COMPANY.

Berkshire.    September 12, 1911. — October 21, 1911.

Present: RUGG, C. J., MORTON, HAMMOND, & BRALEY, JJ.

*Messenger Service. Agency,* Existence of relation. *Bailment. Negligence,* Of
messenger boy. *Conversion. Contract,* Exempting messenger company from
liability. *Evidence,* Judicial notice, Competency. *Damages.*

At the trial of an action against a corporation, engaged in the business of furnish-
ing on application messengers to carry parcels, to recover the value of a parcel
delivered to such a messenger, there was evidence tending to show that the
plaintiff, a dressmaker, had been accustomed to procure from the defendant mes-
sengers for the delivery of parcels, that on the occasion in question, upon her ap-
plying for a messenger, a boy appeared whom she often had used before and had
confidence in, that, since she last had used him, the boy had become a clerk in the
defendant's office and in charge of its messenger boys and was no longer a mes-
senger, that the plaintiff did not know that he no longer was a messenger and gave
the parcel to him with specific directions as to the place at which it was to be
delivered. The boy took the parcel to the defendant's office, where he delivered
it to another boy who, either because of directions negligently given to him by
the first boy or because of his own carelessness, lost it. *Held,* distinguishing
*Haskell* v. *Boston District Messenger Co.* 190 Mass. 189, that the terms of his
employment by the defendant made it impossible for the boy who received the
parcel from the plaintiff to be her servant or agent; that, for lack of a mutual
understanding between the parties, there was no express contract of employment
and the defendant, having accepted the parcel for delivery for compensation
and having assumed control and care of it, became a bailee so that the delivery
of the parcel to the boy who lost it did not make that boy the plaintiff's agent;
and that, whichever boy's negligence was the cause of the plaintiff's loss, the
defendant was liable.

Where a corporation, engaged in the business of furnishing upon application mes-
sengers to deliver parcels, furnishes to a customer a messenger to whom the cus-
tomer delivers a parcel for personal delivery because he has confidence in the
messenger, the corporation has no right as matter of law to substitute another
messenger to complete the delivery without the express assent of the customer,
there being no such necessity for the employment of a sub-agent as to cause the
customer's assent to such employment to be implied.

At the trial of an action against a corporation, engaged in the business of furnish-
ing upon application messengers to deliver parcels, to recover for the loss of a
parcel given by the plaintiff to a boy, who was sent to him by the defendant upon
his application for a messenger and to whom the plaintiff delivered the parcel
because, knowing him, he had confidence in him, it appeared that, unknown to
the plaintiff, the boy who received the parcel no longer was a messenger but
was a boy in charge of messengers for the defendant, and that he took the par-
cel to the defendant's office and, without the assent of the plaintiff, delivered
it to a boy who lost it. The plaintiff asked the judge to instruct the jury in

substance that the defendant might be found liable for conversion if the jury were satisfied that in response to the plaintiff's order the defendant agreed to send a messenger to the plaintiff's place of business, and instead sent its servant, who was not authorized to act as messenger, but who without disclosing his want of authority wrongly received the bundle, which never was delivered as the plaintiff directed or returned to the plaintiff. *Held,* that the instruction could not have been given, because the original taking of the parcel from the plaintiff was without intent to assert any right of the defendant or to deny the plaintiff's title.

If a corporation engaged in the business of furnishing upon application messengers for the delivery of parcels receives a parcel from a customer as a bailee and not under such circumstances that any of its servants or agents becomes a servant or agent of the customer, and if the parcel is misdelivered by its employee, this constitutes a conversion for which the corporation is liable.

Where, at the trial of an action by a dressmaker against a corporation, which was engaged in the business of furnishing on application messengers for the delivery of parcels and which the plaintiff often had employed, for the loss of a parcel given to such a messenger for delivery, there is no evidence that the parcel was such that its appearance would deceive a person receiving it as to its value or any evidence of a rule or regulation of the defendant exempting it from liability in case a package of extraordinary value was given to one of its messengers or of a general custom that such companies received only parcels of small value, the jury should not be instructed that it was a matter of common knowledge that the defendant's business included only the delivery of packages not of great value and that, if the plaintiff delivered a valuable parcel to the messenger without notifying the defendant or its messenger of its value, he was not in the exercise of due care and could not recover; and the giving of such instructions, followed by a verdict for the defendant, constitutes error prejudicial to the plaintiff and warrants the sustaining of exceptions.

Where, at the trial of an action of tort by a dressmaker for the loss of certain gowns, it appears that the gowns may have no market value because they were made to order for a certain customer, evidence of the cost of the labor and material used in their construction is competent upon the question of damages.

CONTRACT OR TORT, with a declaration containing, after the allowance of successive amendments following the sustaining of sundry demurrers, three counts, the first of which alleged in substance that the defendant, which " undertakes to furnish reliable and trustworthy messenger boys to deliver messages and parcels within the city of Pittsfield," upon the request of the plaintiff for such a boy, sent to her a messenger boy well known to her to be trustworthy and reliable, to whom she delivered a package containing valuable dresses to be delivered at an address named by her and known to the messenger; that the messenger, " on the way to " the designated address, went to the defendant's office, " where the defendant's managers took the package from the messenger boy, and carelessly and negli-

gently delivered it to some boy or person wholly inexperienced and untrustworthy, and managed and conducted the carrying and delivering of said parcel in such a negligent and careless way that" it was lost. Another count alleged that the defendant had converted the gowns to its own use. A third count alleged in substance as the cause of the plaintiff's loss the fact that the second boy, who was untrustworthy and unreliable, had been chosen by the defendant without ordinary care in selection and without investigation being made or precaution taken to ensure his being reliable and trustworthy. Writ dated December 18, 1909.

In the Superior Court the case was tried before *Crosby*, J. There was evidence tending to show the following facts:

On October 14, 1909, the plaintiff, a dressmaker in Pittsfield, who was accustomed to use the defendant's messenger service in the delivery of parcels, called the defendant's office on the telephone and asked for a messenger. In response to her call one Tierney came. The plaintiff had used Tierney on former occasions, when he had acted efficiently, and he was a boy in whom the plaintiff had great confidence. On the occasion in question, however, Tierney no longer was a messenger, but was a clerk in charge of the messenger boys in the defendant's office. The plaintiff did not know that he no longer was a messenger boy. He did not wear a uniform or distinctive cap, either as a messenger boy or as a clerk.

The plaintiff delivered a parcel to Tierney with directions to take it to a Mrs. Cowles at 151 East Street, Tierney saying that he knew the place, having been there frequently. He took the parcel to the defendant's office, laid it down and a few minutes later handed it to one Schwatz (called elsewhere in the bill of exceptions Schwartz), a messenger boy in the defendant's employ.

Tierney testified that with the parcel he handed to Schwatz a slip bearing the words " Mrs. Murray " after the words " Called by " which were printed thereon, and that he wrote upon the slip the address " Mrs. Cowles, 151 East Street," after the printed words " Sent to."

Schwatz, who was twelve years old at the time, testified that the slip had on it the name " Mrs. Murphy" and that Tierney

told him to take it to " Murphy, 151 East Street."   He went to
East Street, could not find number 151, "asked some ladies and
they didn't know anybody by" the name Murphy, "and I asked
some men and they said they didn't know, until I came to one
man and that man says 'That man over there is Mr. Murphy,'
and I asked him and he says, 'Yes, his name was Mr. Murphy,'
and he took the bundle and went away."

At the close of the evidence, the plaintiff asked that the jury
be instructed as follows :

"1. If you find that Tierney as the agent of the defendant
company was authorized by the company to take parcels and
bring them to the office of the company and there deliver them
to its messenger boys to be carried to their destination and was
authorized to instruct such boys what to do with the parcels
and that plaintiff did not know these facts but supposed that
the clerk was to be her messenger and that Tierney did take this
parcel to the office of the company and gave it to Schwatz to
take to its destination, then Schwatz would be the servant of the
defendant and if the parcel was lost through Schwatz's negli-
gence, the defendant would be liable.

" 2. If you find that Tierney as the agent of the defendant
company was authorized by the company to take parcels and
bring them to the office of the company and there to deliver
them to its messenger boys and that he did not start to carry
the parcel to its destination but in the course of a common prac-
tice took it to the office of the company and that he was negli-
gent either in writing a wrong name on the slip accompanying
the parcel or by failing to put in the name of Cowles or that he
was negligent in choosing Schwatz for this errand and negligence
in any of these particulars caused the loss of the parcel, then
the defendant would be liable.

" 3. If you find that Tierney as the agent of the defendant
company was authorized by the company to take parcels and
bring them to the office of the company and there to deliver
them to its messenger boys and was not himself a messenger boy
and that the undertaking fairly to be gathered from the plain-
tiff's telephone order and the defendant's answer was that the
defendant should furnish a messenger boy to the plaintiff at her
place of business, then it would follow that the defendant did not

furnish a messenger boy as agreed and that the defendant through its agent Tierney took the parcel from the plaintiff tortiously at the plaintiff's place of business, and the plaintiff could recover on her count in trover for conversion of the package provided it was lost and never returned to the plaintiff.

" 4.  The defendant is liable for the acts of the messenger boy Schwatz to whom the package was delivered by the clerk in charge of the company's business.

" 5.  The defendant is bound to use ordinary care in the selection of its messenger boys and make investigations and take precautions to ensure the exclusion of all unfit persons and to secure persons of such mental and moral qualifications as render them trustworthy and if the defendant failed to take due precautions in these particulars and you find that the boy Schwatz was incompetent by reason of his being too young or on account of his age taken in connection with his mental and moral qualifications as you may judge them from his appearance and conduct on the witness stand, bearing in mind that he was then nearly two years younger than he is to-day and as you may judge them from his conduct on the night in question in getting the name ' Murphy ' and handing the package and address slip to a man on the street, and if the defendant in using due precaution could not have hired Schwatz and the package was lost by reason of Schwatz's misconduct, the defendant would be liable."

The judge refused to give any of these instructions.  Among other instructions contained in the charge to the jury were those stated in the opinion.  The jury found for the defendant; and the plaintiff alleged exceptions.

*J. Barker,* (*M. B. Warner* with him,) for the plaintiff.

*E. P. Carver, G. P. Wardner & R. E. Goodwin,* for the defendant, submitted a brief.

BRALEY, J.  The instructions as to liability under which a general verdict was returned for the company were largely, if not wholly, predicated upon *Haskell* v. *Boston District Messenger Co.* 190 Mass. 189, and portions of the opinion, defining the implied contract or duty of the defendant in that case and the care required in the selection of messengers, were quoted as applicable in the case at bar.  But the ground upon which the defendant was exonerated in that case rested upon the contract with the plain-

tiff; and it was accordingly held that as the messenger received his instructions directly from the plaintiff he became the plaintiff's servant during the time of service, even if he continued in the general employment of the company.   It was further decided, that under the bailment the defendant did not assume the liability of a common carrier, but contracted only that the messenger furnished should be a suitable person for the performance of the duty entrusted to him.   *Haskell* v. *Boston District Messenger Co.* 190 Mass. 189, 192, 194.   The duties and liability of the defendant in the present case however must depend upon the contract between the parties and the first inquiry is, whether one Tierney, who was sent to the plaintiff in response to a call from her for a messenger, became her servant or agent, and for whose subsequent conduct the defendant should not be held responsible.   It was not in dispute, that although formerly a messenger, he had become a clerk having charge of the defendant's messengers, and that the plaintiff, who on former occasions had dealt with him as a messenger before he became clerk, and in whom because of his efficiency and honesty she reposed great confidence, was ignorant of the change in employment.   The jury upon the evidence would have been justified in finding, that when the plaintiff delivered to him the bundle containing the gowns, she understood and believed that he was still in the defendant's general employment as messenger, and that having been sent at her request, he was subject to her orders for the time being.   It is manifest that Tierney remained the servant of the defendant. The duty which he owed to the company of supervision of its messenger boys whose services might be required at any moment by customers, precluded his acting for the plaintiff as an errand boy, whom she could command, and whose acts she could control until the purpose for which she wished the aid of a messenger had been accomplished.   See *Bowie* v. *Coffin Valve Co.* 200 Mass. 571, 578; *Shepard* v. *Jacobs*, 204 Mass. 110.

It is contended by the defendant, that it was accustomed to substitute for the messenger who answered a patron's call, and to whom the carriage and delivery of parcels had been committed by the patron, another messenger to perform the service, if the convenient management of its business required the change, and the jury were instructed that the substitution could be properly

made. But it is only where the principal assents, or where from the nature of the agency a sub-agent necessarily must be employed in transmission, that the assent of the principal is implied. *Dorchester & Milton Bank* v. *New England Bank*, 1 Cush. 177, 186. *Lowell Wire Fence Co.* v. *Sargent*, 8 Allen, 189, 192.

The defendant sent Tierney not as its messenger but as its clerk, and the jury upon the uncontradicted evidence could have found, that the plaintiff believing him to be a messenger, not only gave him specific directions for his guidance, but entrusted to him alone the duty of delivery. No express contract having existed for want of a mutual understanding between the parties, and the defendant as a bailee for compensation having voluntarily accepted the gowns to be forwarded, and assumed the control and care of them, their subsequent delivery by Tierney to the defendant's employee and messenger boy, one Schwatz, whom he selected, did not constitute Schwatz the plaintiff's servant or agent.

The defendant was fully informed of the nature and particulars of the service required. If through the negligence of Tierney in misdirecting the bundle when he returned to the defendant's office, or through the negligence of Schwatz, as-the jury would have been warranted in finding upon the evidence, the gowns were never delivered to the plaintiff's customer, the defendant would be liable for the loss. *Newhall* v. *Paige,* 10 Gray, 366. *Maynard* v. *Buck*, 100 Mass. 40, 47. *Wood* v. *Remick*, 143 Mass. 453. *American District Telegraph Co.* v. *Walker*, 72 Md. 454. *Sleat* v. *Fagg*, 5 B. & Ald. 342. The plaintiff's first, second and fourth requests should have been given, and the instructions, that Schwatz was the plaintiff's servant for whose conduct the defendant would not be responsible, unless the jury found that the defendant did not exercise ordinary care in his selection and employment, were erroneous.

The plaintiff's third request, that the defendant might be found liable for conversion if the jury were satisfied that in response to the plaintiff's order the defendant agreed to send a messenger to her place of business, and instead sent its servant, who was not authorized to act as messenger, but who without disclosing his want of authority wrongly received the bundle, which was never delivered as she directed or returned to the

plaintiff, was rightly denied.   The carrying away of the parcel by Tierney under the belief of the plaintiff that he was acting as messenger may have been unauthorized, but, the parcel not having been originally taken with intent to assert any right of the defendant or to deny the plaintiff's title, there was no proof of conversion.   *Farnsworth* v. *Lowery*, 134 Mass. 512.   *Berry* v. *Friedman*, 192 Mass. 131, 136.

But in connection with the fourth count and this request, it should be noticed, that if contrary to the plaintiff's directions the bundle or parcel was delivered to the wrong person, the delivery would be a conversion, as neither Tierney nor Schwatz was the plaintiff's servant.   The rule is well stated by Mr. Justice Foster in *Hall* v. *Boston & Worcester Railroad*, 14 Allen, 439, 443: "A misdelivery of property by any bailee to a person unauthorized by the true owner is of itself a conversion, rendering the bailee liable in trover, without regard to the question of due care or degree of negligence.   This is a well established legal principle, applicable to every description of bailment. . . . And a delivery to an unauthorized person is as much a conversion as would be a sale of the property, or an appropriation of it to the bailee's own use.   In such cases neither a sincere and apparently well founded belief that the tortious act was right, nor the exercise of any degree of care, constitutes a defense even to a gratuitous bailee."

The plaintiff also excepted to the instruction, that "if the jury find that the plaintiff delivered to the defendant's messenger boy a package containing articles of great value without notifying the defendant or its messenger boy that said package did contain articles of great value, the plaintiff was not in the exercise of due care and cannot recover," and "that if the package was delivered and no notice of its contents was given to the company, or to anybody representing it, then this plaintiff is not entitled to recover."   No evidence appears that the company had established any rules or regulations exempting it from liability, if packages of ordinary merchandise which it engaged to deliver were lost in transportation, nor was there proof of a general custom, that in common with other companies engaged in a similar business only packages of small value were received.   In the absence of such evidence these instructions, and the further in-

struction, that it was a matter of common knowledge that the defendant's business included only the delivery of packages not of great value, misled the jury and were incorrect. *Barrie* v. *Quinby,* 206 Mass. 259, 264, 265. The defendant's agent on the evidence could have been found to have known that the plaintiff · was a dressmaker who frequently had employed the company's messengers for the delivery of goods to her customers and it does not appear that the form of the bundle was such as to mislead him as to its character or value, and unless inquiry was made, she was under no obligation at common law to state the value and nature of the contents of the parcel. *Dwight* v. *Brewster,* 1 Pick. 50, 54. *Phillips* v. *Earle,* 8 Pick. 182. *Gage* v. *Tirrell,* 9 Allen, 299. *Dunlap* v. *International Steamboat Co.* 98 Mass. 371,. 377, 378. And the jury should have been so instructed. The plaintiff is justified in the assumption, that this error of itself might have caused the jury to return a verdict for the defendant, even if under the instructions as to liability they were satisfied that the loss resulted from the incompetency of Schwatz, with notice of which they also found that the defendant was chargeable.

The exceptions to the admission of evidence really involve the measure of the plaintiff's damages. The gowns, having been made to order for a particular customer, may have had no market value, and evidence of the cost of the labor and material was competent as bearing upon the question.

We have considered the exceptions so far as argued by the plaintiff, and for the reasons stated there must be a new trial.

*Exceptions sustained.*