### OVERTON v. OVERTON.

No. 16584—Opinion Filed May 4, 1926.

Rehearing Denied June 1, 1926.

(Syllabus.)

1. **Husband and Wife—Action for Alienation of Husband's Affections—Statute of Limitations.**

In an action brought by a former wife to recover for the alienation of her husband's affections, where it appears that the husband did not separate from his former wife until after she filed her petition for divorce on November 16, 1922, and action was brought for alienation of his affections on November 15, 1924, the statute of limitations is not a bar; the plaintiff was not limited in her proof to the one day's interval between November 16th and November 15, 1922, if otherwise relevant.

2. **Same—Presumption of Duration of Affection till Separation.**

It will be presumed that the plaintiff's husband had affection for her up to the time of separation, in the absence of evidence to the contrary.

3. **Same—Damages—Evidence Admissible to Show Pecuniary Condition of Party.**

In an action by a wife for alienation of her husband's affections, where the plaintiff sought to show the financial condition of defendant for the purpose of increasing exemplary damages, held, the will of defendant's deceased husband showing defendant was a beneficiary was not improperly admitted.

4. **Same—Proper Instruction on Theories as to Means of Alienation.**

When an instruction is given in an action for alienation of affection of a spouse subjunctively presenting for the guidance of the jury a theory of alienation by sexual intercourse and a theory of alienation by insidious wiles, etc., and there is evidence to support both theories, such instruction is not error.

5. **Same—Excessive Damages.**

An award of $150,000 damages for aliena-

tion of affections of plaintiff's husband is excessive under the facts of this case and will be reversed and a new trial awarded unless plaintiff files a remittitur in the sum of $90,000 on entry of judgment.

Error from District Court, Tulsa County; O. H. Searcy, Assigned Judge.

Action by Ann Overton against Ellen Overton for the alienation of the affections of C. H. Overton, husband of plaintiff. Judgment for plaintiff, from which defendant appeals. Affirmed on condition of remittitur.

Biddison & Campbell, for plaintiff in error.

Moss & Farmer and T. G. Chambers, Jr., for defendant in error.

RILEY, J. This cause presents an appeal from the judgment of the district court of Tulsa county wherein the defendant in error, Ann Overton, sustained a judgment in the sum of $150,000 ($30,000 of which amount was exemplary) against the plaintiff in error, Ellen Overton, for the alienation of the affections of C. H. Overton, husband of the former. References to the parties are hereafter made as they appeared below.

The plaintiff and C. H. Overton were married in 1906, and of this union two children were born, Tom and Margaret, who were of the ages of 17 and 12, respectively, at the time of the institution of this action. Plaintiff and her husband were long residents of Tulsa, happily situated, and they accumulated considerable property by their joint industry, which property in a divorce decree hereinafter mentioned was found to be in the approximate value of a quarter million dollars.

The plaintiff became aware of defendant's association with C. H. Overton on November 4, 1921, in a conversation over the telephone between the defendant and Overton, and on the next day the plaintiff requested the defendant to give up her attentions to Overton, which request the defendant refused. The defendant thereafter called Overton by tele-

phone and came in person to the Overton home and there threatened to kill the plaintiff. Thereafter occurred various escapades and rendezvous between Overton and defendant centered about various apartments in Tulsa and extended to Oklahoma City.

On November 16, 1922, plaintiff filed her petition against Overton for divorce.

It appears from the testimony of plaintiff that Overton remained at his home with his family "practically all the time" until after the petition for divorce was filed on November 16, 1922. (R. p. 63.)

There was corroborated testimony that Overton returned to his home on Christmas, 1922, with gifts for all of his family; that he discussed with plaintiff the dismissal of her petition for divorce and promised to give up his association with defendant. The plaintiff and Overton were divorced by decree on April 27, 1923. Overton and defendant were married the following November; and Overton departed this life May 19, 1924. The case at bar was begun on November 15, 1924.

It appears from the evidence that defendant Ellen Overton's maiden name was Blackston; she claimed a common-law marriage with one Wright, deceased, yet, to the contrary, she testified that she had never been married before her relation with Overton. The evidence shows that without marriage she assumed various convenient names, and that prior to her marriage with Overton and during her residence in Tulsa her livelihood was secured without sweat of her brow.

It is contended by the defendant that plaintiff's cause of action was barred by the statute of limitation.

The gist of an action for alienation of affections is the loss of society, affection, assistance, conjugal fellowship and consortium. Brown v. Brown, 104 Okla. 206, 230 Pac. 853; Farneman v. Farneman, 46 Ind. App. 453, 90 N. E. 775, 91 N. E. 968; Murray v. Postal T. & C. Co., 210 Mass. 188, 96 N. E. 316, Ann. Cas. 1912C, 1183. The statute of limitations begins to run in such cases from the date of the loss of consortium (Wolle v. Luckenbach, 26 Pa. Dist. 907), which, as stated in 30 C. J. 1128, may be when plaintiff separates from the alienated spouse.

In Bockman v. Ritter (Ind. App.) 52 N. E. 100, where it was contended that the damage was accomplished more than two years before the commencement of the action, the contention based upon the complainant's statement "that about four years ago the

defendant began to poison the mind of the appellee's wife," it is said:

"But it appears from the complaint that the injurious consequence of the appellant's wrongful conduct for which the appellee sought damages was not fully accomplished until the wife left her home and the appellee and declared she would not live with him longer. This was on September 12, 1896, which was less than two weeks before commencement of the action. That it required four years of wrong to accomplish this result cannot operate to the benefit of the wrongdoer."

Likewise, in the case of Wolle v. Luckenback, supra, where in the state of Pennsylvania a statute of limitation of six years applied and where in the action brought by a husband to recover for the alienation of his wife's affection, and where it appeared that the plaintiff separated from his wife on July 25, 1909, and suit was brought on July 23, 1915, it was held that the statute of limitation was not a bar to the action and that the plaintiff was not limited in his proof to the two days' interval between July 23, and July 25, 1909, provided the proof was otherwise relevant.

The statute of limitation began to run from the time when the cause of action herein accrued, no exceptions being pleaded. Generally a cause of action accrues at the moment the party owning it has a legal right to sue, except wherein extrinsic facts are interposed which would postpone the operation of the statute.

The gist of the cause of action herein has been said to be the loss of consortium of the husband. More or less of a complete loss of this is shown to have occurred at the time the husband left his home and severed his marital relations with the plaintiff. It is shown by the undisputed testimony of plaintiff that this loss occurred after the filing of the petition for divorce on November 16, 1922, and since the action herein was filed within one day of two years thereafter, without considering the effect of the return of the husband on Christmas of 1922, and his fleeting promise of breaking off with the defendant, and without considering a new enticement by the defendant, if any, we hold that the statute of limitation is not a bar to the action herein presented. Mohn v. Tingley et al. (Cal.) 217 Pac. 733.

This we hold, notwithstanding the contention of defendant's counsel that there is not one scintilla of testimony as to any action of defendant later than some days prior to the filing of the petition for divorce, for the damage for which relief is sought was not

fully accomplished until the husband permanently left plaintiff's home. It is the latent wrong theretofore committed which evidenced itself at the date of the complete loss for which plaintiff seeks her remedy and not for continuing wrongful acts thereafter. When the wrong was evidenced by the loss, the cause of action was complete, the statute of limitation began to run, and additional wrongful acts, if any, are of no consequence so far as this action is concerned.

Nor do we intend laying down a rule that the aggrieved spouse, in order to maintain such a suit, must be wholly abandoned in the literal sense and separated from the erring one with or without a decree of divorce as a price of redress for injuries sustained. But where a literal abandonment or actual loss occurs, then it would seem that the loss of the spouse's physical presence in the home is the climax as to time from whence the statute of limitations runs. See Rott v. Goehring (N. D.) 157 N. W. 294; Mussellem v. Frenn, 101 Okla. 45, 225 Pac. 370.

The Supreme Court of Alabama in Woodson v. Bailey, 98 South. 809, holds:

"Loss by either husband or wife of rights to the person, affection, society, assistance, aid, fellowship, companionship, co-operation, or comfort of the other constitutes a loss of consortium."

And this we think is a good definition of the term.

In Mussellem v. Frenn, supra, it is said:

"It is settled law that in an action for alienation of affection it will be presumed that the plaintiff's husband had affection for her up to the time of the separation, in the absence of evidence to the contrary."

Assignments of error 4 and 5 are grouped under the contention that the court erred in admitting incompetent, irrelevant, and immaterial evidence in permitting plaintiff to testify as to her intention and motive in filing her divorce petition against her husband. Her testimony was that such purpose was to bring about a reconciliation. It is urged that such testimony is contradictory and in repudiation of the sworn pleading contained in the petition for divorce. It is not apparent to us wherein the testimony as to the purpose in filing the suit is contradictory or in repudiation of the judicial proceedings in the divorce.

It is next contended that the trial court erred in permitting the plaintiff to introduce the will of C. H. Overton, deceased, showing thereby what property the defendant received under the will. This evidence was admitted for the purpose of showing the financial condition of the defendant. In view of the fact that exemplary damages were sought, the will was admissible to show the financial condition of defendant for the purpose of gauging the exemplary or punitive damages. Taylor v. Wilcox, Adm'x, 188 Ill. App. 18.

Objections were made and exceptions saved as to the giving of an instruction which was to the effect that if defendant knowingly intentionally, willfully, and maliciously had sexual intercourse with the husband of the plaintiff "or by means of insidious wiles, deceit, flattery, or wicked cajolery" did alienate the love and affection of the husband of the plaintiff from her and thereby deprive plaintiff of the same, then they should find for plaintiff. It is insisted that there was no suggestion of any testimony that defendant did use insidious wiles, deceit, flattery, or wicked cajolery on the husband, and that, therefore, it was error to instruct the jury upon a theory of the case without evidence to support that theory, in accordance with the rule of this court expressed in White v. Oliver, 32 Okla. 479, 122 Pac. 156.

The record abounds with evidence to support the two theories advanced and subjunctively connected by the instruction; the one of alienation by sexual intercourse by circumstantial evidence, denied by defendant in her testimony; the other of alienation by insidious wiles, deceit, flattery, and wicked cajolery, by direct evidence—insidious wiles, by defendant following Overton into the street clad in her night clothes; flattery by telephone calls insisting on Overton's company; wicked cajolery by evidence of her general conduct with Overton, exemplified by a letter written by defendant describing a drunken orgy with her consort, Overton. There is no merit in this contention, and the law submitted is not applicable.

It is urged that the damages are excessive and that the jury was actuated by passion and prejudice.

The damages are heavier than most of the cases that have been brought to our attention. These damages are peculiarly within the province of the jury, and the verdict is not to be interfered with lightly on the claim that it is excessive. Hendrick v. Bigger, 136 N. Y. Supp. 306. Let us view the marital rights of which the plaintiff was deprived and for which she may recover damages. From the definition of "consortium" heretofore adopted these rights are of two

classes: (1) Personal and mental, including the society, the affection, and the companionship of the husband; upon these elements there is a large measure of discretion with the jury; the other, financial, including the right to be maintained and supported during her life in accordance with her rank and station, the right of co-operation, the right of assistance. These elements constitute more or less of a concrete and exact division of the whole that may be ascertained from facts and figures.

The will was introduced in evidence for the sole purpose of showing the financial condition of the defendant for the assessment of exemplary damages. It showed that the estate made up of the separate property of the deceased husband was valued at $268,950, and that defendant benefited thereunder in the approximate sum of $129,575. Witness Price testified that the estate of deceased was of the value of $263,950, and that there was a liability against it of $140,000, leaving an amount of actual value of the estate of $123,950. From these facts presented we cannot see that the $30,000 assessed as exemplary damages are excessive. It is apparent to us that the facts and figures of the will influenced the jury in its verdict as to compensatory damages. Under the will the plaintiff received nothing; however, the right to make a will is given by law to every person of legal age and of sound and disposing mind. The marital right of plaintiff does not include the right to have a will made by the deceased husband in plaintiff's favor. Questions affecting the validity of the will cannot be tried in this action.

After a careful consideration of the record, showing in the beginning a happy, contented, and attentive husband and father, a condition unchanged by act of plaintiff, but by defendant's acts a man transformed from a co-operating, sober, and considerate husband into another being, who according to the record was not thereafter possessed of those attributes which distinguish a gentleman and render more valuable a husband, and with a great deal of reluctance in the exercise of a discretion that was peculiarly within the province of the jury in estimating the element of the damage to flow from an aggrieved personal and mental condition of plaintiff in the loss of companionship, love, and affection, and with a view to the financial lost rights of assistance and co-operation and support, lessened as the amount of damages to these rights may have been by the division of the jointly acquired property at the time of the divorce, we affirm the

judgment of the lower court, provided the plaintiff files a remittitur in the sum of $90,000 on entry of judgment, otherwise the judgment will be reversed and a new trial ordered.

HARRISON, LESTER, HUNT, and CLARK, JJ., concur. PHELPS, J., concurs in part, but dissents as to the remittitur ordered, and is of the opinion that the judgment should be affirmed as a whole. BRANSON, V. C. J., dissents as to syllabus par. 3. NICHOLSON, C. J., absent and not participating.