## FIFE v. ADAIR.

No. 22503.  June 18, 1935.

Rehearing Denied July 16, 1935.

Clark & Jack Nichols and Kelly Brown, for plaintiff in error.

A. M. deGraffenried, for defendant in error.

PER CURIAM. On the 30th day of August, 1930, Hattie Adair filed her petition in district court of Muskogee county, Okla., against Exie Fife, seeking to recover $80,-000 as damages, and $25,000 as punitive damages for the alienation of her husband's affections.

This cause was tried to a jury on the 24th day of March, 1931, and a verdict was rendered in favor of the plaintiff, Hattie Adair, and against the defendant, Exie Fife, in the sum of $15,000 damages, and $5,000 exemplary damages.

Motion for new trial was duly filed by the defendant, Exie Fife, overruled by the trial court, and said cause appealed to this court by said defendant, Exie Fife.

For convenience, the parties will be referred to here as they appeared in the trial court. The defendant contends under assignments of error 1, 2, 3, 4, 9, and 10, the evidence does not sustain the verdict.

An excerpt of the testimony introduced by plaintiff shows that in 1920, Hattie and Jess Adair were married, and that of said marriage four children were born, ages 2, 5, 7, and 9; that Jess Adair was a considerate and affectionate husband, provided well for his wife and children until in the fall of 1929. Since the fall of 1929 Jess seemed to pay no attention to his family and showed no affection for them. He made frequent trips to the home of Exie Fife and was entertained frequently by her; that he and Exie were seen together on numerous occasions and displayed a great deal of affection for each other. Exie gave Jess a Christmas present and furnished him money on some two or three occasions. They were seen together with her arms around his neck and with his head lying on her lap. Her attention was called to the fact that Jess was a married man and that she should leave him alone, but she replied she did not care, she was going to get him if she could, that she loved him. Just before Christmas, 1929, Jess Adair, Exie Fife, and Mrs. Nellie Carmack made a trip to McAlester; Jess and Exie occupied a room at a tourist camp. Exie Fife, Jess Adair, Mrs. Carmack, and Ben Fife, a brother of Exie Fife, all made

a trip to Mexico by automobile. At Abilene, Tex., the party stayed at a tourist camp; Exie and Jess slept together in one of the cottages. At Camp Grande, El Paso, Tex., Jess and Exie occupied the same cottage. On the way back, at Sweetwater, Tex., Jess and Exie occupied the same room, also at El Paso. Exie discussed the question about Jess procuring a divorce and said she would be willing to provide for his wife and children; she paid the expenses of the trip. This testimony is denied by the defendant, and contradicted by the witnesses in her behalf.

"There is no rule of law better settled in this state than that when disputed questions of fact are submitted to the jury, the jury's verdict and the judgment rendered thereon will not be disturbed on appeal, if there is any evidence reasonably tending to support the same." Ponca City Milling Co. v. Krow. et al., 131 Okla. 98, 267 P. 630.

Following this rule and considering the testimony of the plaintiff as a whole, including that which has not been quoted herein, if believed by the jury, it is ample to support the verdict.

Under assignment 5, defendant complains of the rejection of certain evidence. It is only necessary to consider the evidence rejected by the trial court where an offer was made on the part of the defendant as to what the evidence would have been had the witness been permitted to answer.

"When the question is asked the witness and objection to it is sustained by the court, the substance as to what the witness would state, if permitted to answer the question, must be written and presented to the court or dictated into the record, * * * and if the court then refuses to admit it in evidence an exception may be saved and presented to this court for review; otherwise, there is nothing for this court to pass on under the assignment." Tandy v. Garvey, 115 Okla. 214, 242 P. 546.

The defendant made two offers as to what the witnesses would testify to had the answers been permitted to be given. One offer is as follows:

"The defendant offers to prove that in a former case wherein Leona Richards was plaintiff and Exie Fife was defendant, that Ves Carmack and Nellie Carmack were the witnesses and that they were working continuously with the attorneys for the plaintiff, against the defendant's interest, and that they took the witness, Jess King to the office of the attorney for Leona Richards and attempted to induce him to testify, by that I mean Ves Carmack did, against Exie

Fife, which he, Jess King refused to do, and that at a later time, they offered to give the witness, Jess King, a promissory note which was signed and indorsed by Eastman Richards, who was a wealthy Creek Indian, if he would testify for the plaintiff, Leona Richards, against Exie Fife. That the same Ves Carmack and his wife, Nellie, the day after Exie Fife was sued in this case came to Exie and attempted to induce her to employ the same attorneys who were Leona Richards' attorneys in the former case against Exie Fife, to defend Exie in this case, and that he sent a telegram to the attorney, who was out of the city, to which the attorney responded, and made other efforts and used other persuasions attempting to get Exie to employ said attorney in this case, saying to her that he would not testify for her unless she employed the attorney he recommended to her."

The other offer of evidence is shown at page 192 of the record. We take it this offer of evidence was made in connection with the testimony offered on behalf of the defendant by the witness King. Mr. King's testimony is rather short and we will set it out in full:

"Q. State your name to the court and jury. A. Jess King. Q. Have you been sworn? A. Yes, sir. Q. Where do you live? A. Eufaula, Okla. O. How long have you lived there? A. Oh, practically all of my life. Q. How old are you? A. 29 years. Q. Are you a full-blood Creek Indian? A. Yes, sir. Q. Do you know Exie Fife? A. Yes, sir. Q. How long have you known her? A. All her life. Q. Do you know Ves Carmack? A. Yes, sir. Q. And Nellie Carmack? A. Yes, sir. Q. I will ask you to state if you and Ves Carmack had anything to do with the Leona Richards alienation suit? Mr. deGraffenried: Object, incompetent, irrelevant and immaterial, not tending to prove any issues in this case and it is highly prejudicial to the rights of the plaintiff. The Court: Sustained. Mr. Nichols: Exceptions. Mr. deGraffenried: I now ask the jury to be instructed not to consider the question in any way, shape, fashion or form. Mr. Nichols: Exceptions. I would like to reserve the right to at a later time make my offer of proof by this witness and have the court rule on it. The Court: All right, Mr. Nichols, I will let you do that. Mr. Nichols: Have you had anything to do with Ves Carmack in connection with this present case? Mr. deGraffenried: We object, incompetent, irrelevant, and immaterial, it does not tend to prove or disprove any issue in this case; and for the further reason that whatever Ves Carmack might have done is not binding upon the plaintiff in this case. The Court: The objection is sustained, and the jury is instructed not to

236

consider the question. Mr. Nichols: Exceptions: If the court please, we would like to reserve the same right to make our offer of proof at a later time. The Court: All right, Mr. Nichols you may do so. Mr. Nichols: That is all. Mr. deGraffenried: No questions." (Witness excused.)

The questions propounded to King in reference to this and the Leona Richards alienation suit undertake to show what the witness King and Ves Carmack had to do with these cases. Ves Carmack was not a witness in the instant case. Nowhere in this record is a sufficient foundation shown that would render such testimony admissible in this case. That part of the evidence offered referring to the interest Nellie Carmack showed in this case might have been admissible had the question been propounded to her. The question asked her in reference to the Leona Richards case is as follows:

"Q. Were you subpoenaed as a witness in the case that Leona Richards brought against Exie Fife for alienating of affections? A. I was out. Q. Well, you discussed, did you not, with Leona's attorneys the testimony you would give?"

The last question was objected to and the objection sustained. The record shows that there was no trial of the Leona Richards case. The testimony offered was not admissible by reason of King's testimony or the questions propounded to Nellie Carmack.

The defendant asked the witness Neoma Guthrey this question, "Was anything said that night, the first night they were out there about a present for Jess" The question was objected to and the objection sustained by the trial court; therefore, the defendant made an offer of the following:

"The defendant offers to prove by the witness, Neoma Guthrey, that on the first night that she and Exie met Jess Adair that she was accosted by an officer, policeman, by the name of John Woolsey, and that John Woolsey asked this defendant and this witness if they had anything to eat at their house, to which the witness and defendant replied. 'Yes, we always have something to eat,' and that John Woolsey and Jess Adair then asked the defendant and this witness if they could cook something to eat if they would come out, to which the witness replied, 'Yes, we will go home and cook something to eat.' That at that time and that same time and place Jess Adair said to this defendant, 'The sixth day of the month is my birthday, why don't you buy me a present?' and that the matter of the present was discussed and a small present was bought by reason thereof."

And this additional offer:

"The defendant offers to prove by the witness and the defendant that Jess Adair asked her to buy him a present at that first meeting. The defendant also offers to prove that Jess Adair, husband, asked this defendant for money, and this defendant loaned him money, and at the time he got the money from the defendant, asked her for it, he told her that he wanted it because his family needed it, and she loaned him the money for that purpose."

That part of the testimony offered by defendant in regard to Jess Adair asking for money for his family was properly refused because the question upon which the offer was based did not render it admissible. On redirect examination a question was propounded to this witness in regard to the loan of money, but that was after the offer had been made and rejected. The testimony offered must be admissible at the time the offer is made.

Part of this offer was made in connection with the testimony of the witness Neoma Guthrey. This question was asked her:

"Q. Was anything said the first night they were out about a present for Jess?"

The plaintiff objected and the objection was sustained. We think this question was proper; that the trial court committed error by sustaining an objection thereto, but not reversible error, for the reason that on redirect examination this same witness was permitted to testify over the objection of plaintiff as follows:

"Q. I will ask you to state whether or not on that occasion Jess Adair asked Exie to buy him a present for his birthday which was just a few days off. A. He did."

"The refusal of the court to permit a witness to answer a competent question is not reversible error, if subsequently the witness has been permitted to answer the same question, or substantially the same question." Steward v. Commonwealth National Bank, 29 Okla. 754, 119 P. 216; Ardizonne et al. v. Archer, 71 Okla. 289, 177 P. 446, 177 P. 554.

Defendant complains that throughout the testimony will be found instances where she sought to introduce statements made by the alienated spouse, Jess Adair, which were rejected by the trial court. We have examined the record carefully and there was no offer of proof as to what those statements would have been, except the offer of proof set out herein. Defendant cannot be heard to complain by reason of the rule announced in the Tandy Case, supra.

Defendant very strenuously insists that the introduction in evidence of the American Mortality Tables showing the life expectancy of Mr. Adair is error. Her contention is based upon the case of Johnson v. Richards (Idaho), 294 P. 507, part of which is cited by her as follows:

"Over objection of appellant, the court admitted in evidence the American Tables of Mortality (41 C. J. p. 216, note 65a) 'for the purpose of showing the expectancy on the life of' plaintiff's husband. Respondent urges that the table is applicable to both respondent and her husband, their ages being the same, and was admissible to show the number of years respondent might have expected the association and support of her husband, on the theory that, where marital relation is once shown to exist, there is a presumption that it continues until death. 38 C. J. p. 1328, sec. 102. Assuming such a presumption applicable to a case of this character, it is based upon the further presumption that the love and affection existing between the spouses would likewise continue until the death of one of them. We question if we are permitted to indulge in the latter presumption; but, in any event, we are asked to base a presumption upon a presumption, which we cannot do. The gravamen of respondent's right to recover is founded upon the loss of her husband's conjugal society or consortium, 30 C. J. p. 1123; Pugsley v. Smyth, 98 Ore. 448, 194 P. 686; Boom v. Boom, 206 Iowa, 70, 220 N. W. 17. Such loss may or may not be permanent, according as the parties interested may subsequently determine. The same reasoning applies to the loss of support. Respondent was deprived of something that is of its nature not necessarily permanent; and mortality tables, 'at the best uncertain and conjectural evidence' (Kahn v. Herold, [C. C.] 147 F. 575, 582), could not aid the jury in assessing respondent's damages. See 3 Nichols on Applied Evidence, p, 3123. The expectation of life of respondent or her husband was not relevant under the facts of the instant case, and the admission of the tables was error."

To follow this case would be to hold that the tables are not admissible in any kind of action for the loss of support. The court in the Johnson Case says that to so hold would base a presumption upon a presumption. That is, that the marital relation once shown would continue to exist until death, and that the love and affection would likewise continue until the death of one of them. This court has held in a number of cases that in an action for damages for the loss of support on account of personal injury, the American Mortality Tables are

competent evidence for the consideration of the jury along with the other evidence for whatever probative value they may have. City of Shawnee, et al. v. Slankard, 29 Okla. 133, 116 P. 803, syllabus:

"The expectation of life of one injured by another's negligence may be shown as a basis for the estimation of damages in a case where the evidence tends to show the injury is permanent, and standard tables of mortality are admissible in evidence upon this question."

The loss of support is an element of damages in this case. To hold that the American Tables of Mortality are not admissible for the reason that it would base a presumption upon a presumption would overrule and set aside every case by this court wherein it has been held that such tables are admissible to prove expectation of life where loss of support was an element of damages. In a personal injury case, it could be contended with equal force that you would first have to presume marital relation would continue until death, and the further presumption of continuation of support. Adair was not a witness in this case; in determining the question of the amount plaintiff would be entitled to recover for the loss of the support of her husband, certainly the jury would be entitled to know something as to his age and condition of health. A larger sum should be allowed for the loss of a husband who is young and vigorous than an older one, whose earning capacity would not be as great on account of his age and condition of health. These tables are not admitted in evidence as absolute guides to control the decision of the jury, but for whatever weight the jury may give them along with the other evidence in the case. This court in the case of San Bois Coal Co. v. Resetz, 43 Okla. 384, 143 P. 46, held as follows:

"The mortality tables introduced in evidence to prove that fact did not apply to men in his occupation. But that does not mean that they were not admissible in evidence and had no probative force, They did, and tended to prove such expectancy, and were entitled to go to the jury, along with the other evidence, for what they were worth. Mary Lee Coal, etc., Co., v. Chambliss, 97 Ala. 171, 11 South. 897. In Vicksburg, etc., R. Co. v. Putnam, 118 U. S. 545, 7 Sup. Ct. 1, 30 L. Ed. 257, the court said that these tables are competent evidence for the jury, but not absolute guides to control their decision."

Such tables were properly admitted in evidence in this case. Defendant raises an

238

objection to instructions Nos. 6 and 10. Her contention is that the court erred in instructing the jury, that in case it was found plaintiff was entitled to recover exemplary or punitive damages, the jury could take into consideration the wealth or financial condition of the defendant. This was not error. In the case of Overton v. Overton, 121 Okla. 1, 246 P. 1095, par. 3 of the syllabus is as follows:

"In action for alienation of affection of plaintiff's husband, in which plaintiff sought to show defendant's financial condition to increase exemplary damages, will of defendant's deceased husband showing the defendant was beneficiary was properly admitted."

Defendant objected to instruction No. 10, that under the pleadings and evidence plaintiff was not entitled to recover exemplary damages and that the jury should not have been instructed in reference thereto. At page 123 of defendant's brief it is contended that the following is the rule governing exemplary damages:

"Exemplary damages can only be recovered when the conduct complained of shows the defendant has been actuated by malice or fraud, or has been guilty of oppression or of such gross negligence as to amount to malice."

Instructions No. 6 and 10, as given by the trial court, cover the question of exemplary damages. Defendant says:

"When the court gave the instruction No. 6 above quoted, it was stated that evidence of financial condition of the defendant was admitted, only for the purpose of permitting the jury to fix the amount of exemplary or punitive damages. If the evidence justified this instruction, the instruction so far as the wording is concerned would have been correct."

Again, the defendant further suggests:

"The evidence submitted on the part of the plaintiff is so wholly lacking in any respect of any intentional malice, fraud or oppression, that we cannot see any justification for the instructions above mentioned. From the whole evidence it can be seen that the defendant, Exie Fife, instead of being malicious or willful in her conduct was only acting in accordance with the suggestion by the parties wholly lacking in any of the elements that enter into the question where punitive or exemplary damages can be allowed."

This contention of counsel is not supported by the record. The fact that Exie Fife knew that Jess Adair had a wife and four children; that she was seen with her arms around his neck and that her attention was called to the fact that Jess Adair was a married man; that she said she did not care and that she loved him and she purchased him a present; that on the trip to Mexico she occupied the same room with him at night on four different occasions; that she offered to procure a divorce for Jess and stated that she would be willing to provide for his wife and children, we think amounts to fraud, malice, and oppression. We cannot say that under the facts in this case the damages are excessive. As was stated by this court in the case of Overton v. Overton, supra:

"These damages are peculiarly within the province of the jury, and the verdict is not to be interfered with lightly on the claim that it is excessive."

We have examined the entire record with care and have been unable to discover any error which under the law would warrant us in disturbing the judgment.

The judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys Sylvester Grim, John E. Luttrell, and Richard T. Pendleton in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Grim and approved by Mr. Luttrell and Mr. Pendleton, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.