John MAUPIN, Plaintiff in Error,

v.

NUTRENA MILLS, INC., a corporation, Defendant in Error.

No. 40001.

Supreme Court of Oklahoma.

July 23, 1963.

Rehearing Denied Sept. 24, 1963.

King & Wadlington by Carloss Wadlington, Ada, for plaintiff in error.

McClelland, Collins, Sheehan, Fauss, Bailey & Bailey, by Robert C. Bailey, Oklahoma City, for defendant in error.

PER CURIAM.

Nutrena Mills, Inc., hereinafter referred to as plaintiff, brought an action against John Maupin, hereinafter referred to as defendant, to recover $1,033.50 for chicken feed furnished by plaintiff to defendant at his request and for which he agreed to pay. Attached to the petition as an exhibit is a verified statement of the account.

The defendant filed an unverified general denial and a cross petition. Briefly stated, the defendant in his cross petition sought to recover $10,000.00 from plaintiff as damages he allegedly suffered on account of alleged false and fraudulent statements made by an authorized salesman and agent of plaintiff to the effect that it would not be harmful to the chickens or reduce the production of eggs to change from Purina chicken feed to Nutrena feed and that it would not be necessary to mix other feeds with Nutrena; that if defendant's customers would change to Nutrena chicken feed the plaintiff had a finance plan and would loan to defendant's custom-ers the money to buy plaintiff's products; that defendant relied upon the representations and warranties as made. The defendant further alleged that when he and his customers commenced using plaintiff's feed their egg production decreased and in many cases ceased completely.

At the close of the evidence the trial court sustained the demurrer of plaintiff to the evidence of the defendant on his cross petition and counterclaim. Upon motion by plaintiff for an instructed verdict the trial court directed the jury to return a verdict for the plaintiff for the sum of $1,033.50 and costs. Defendant appeals from the order overruling his motion for a new trial.

Inasmuch as the defendant admitted the amount sued for by plaintiff was correct, owing and unpaid, the only issue for determination is whether the defendant presented sufficient evidence to sustain his burden of proving a prima facie case alleged in his cross petition.

Russell M. Jenson testified that during the years 1959 and 1960, he was district sales manager in Oklahoma for plaintiff and had worked out the details of the sales relationship with the defendant; that defendant stated he needed credit; that defendant was approved as a Nutrena dealer the latter part of July, 1959, and began buying plaintiff's products on credit; that he told defendant that some of his customers might be able to qualify for Nutrena finance and their credit applications would be submitted to the credit department in Kansas City and upon investigation the applications would be approved or disapproved.

Defendant testified that in the summer of 1959, he had about sixteen customers who were in the egg production business; that he owned two different flocks, one was in his wife's name and the other in his son's name; that in 1959 he was selling his customers Purina products, about 40 tons per month at $60.00 per ton, and was netting from $250.00 to $300.00 per month profit. He testified in July, 1959, a Mr.

White, representing Nutrena Mills, called on him and talked to him about handling Nutrena products; that he was told Nutrena products were as good as any other product; that the analysis of the feed was so near to that he was then handling it could be fed without mixing; that he figured Nutrena feed would cause an increase in production of eggs. He further testified White told him Nutrena had a finance plan and he could take individual contracts from the customers which would be financed. Defendant further testified the finance program had a lot to do with his changing feeds; that he changed to Nutrena products; that he did not mix the feed because he relied on what Mr. White told him. On cross examination the defendant was not certain about his decrease in egg production and did not know the cause of the loss in production. In response to the following question "* * * isn't it true that you do not know of your own personal knowledge why the customers quit you, all you know it that they quit, isn't that correct?", the defendant answered, "that's correct".

The other witnesses for the defendant testified in substance they did not know what caused their chickens to molt or drop in egg production.

The defendant contends that the statement made by plaintiff's agent to the effect that Nutrena was equal in quality to Purina and that if he should switch from Purina to Nutrena, plaintiff's feed would not be harmful to the chickens of defendant or his customers, constituted a warranty; that the warranty was breached as the feed was harmful to the chickens of defendant and his customers, which caused a loss of egg production and in turn caused damage to the defendant in the nature of loss of profits from sales of eggs and chicken feed; that the statements made by plaintiff's representative with regard to future financing of defendant's customers amounted to a fraudulent promise made by plaintiff through its agent, without any intention on the part of plaintiff of performing it.

In 77 C.J.S. Sales § 310c page 1140, it is stated:

"While, generally speaking, * * * any direct, positive, and unequivocal affirmation or representation of fact with reference to the thing sold may give rise to a warranty, affirmations or representations which merely express the seller's opinion, belief, judgment, or estimate do not constitute a warranty, no matter how strong the affirmation or representation may be * * *. Under the established and governing rules, dealer's talk is permissible; and puffing, or praise of the goods by the seller, is no warranty such representations falling within the maxim simplex commendatio non obligat."

In Topeka Mill & Elevator Co. v. Triplett, 168 Kan. 428, 213 P.2d 964, the Supreme Court of the State of Kansas said:

"What is a warranty? In 55 C.J., Sales, § 667, it is defined thus: 'A warranty is a statement or representation made by the seller of goods, contemporaneously with and as a part of the contract of sale, although collateral to the express object of it, having reference to the character, quality, or title of the goods, and by which he promises or undertakes to insure *that certain facts are or shall be as he then represents them*. A warranty is express when a seller makes an affirmation with respect to the article to be sold, pending the treaty of sale, upon which it is intended that the buyer shall rely in making the purchase. A warranty is implied when the law derives it by implication or inference from the nature of the transaction, or the relative situation or circumstances of the parties.' (pp. 652, 653.) (Our italics.)

* * * * * *

"Touching matters of opinion or belief the rule is stated thus in 55 C.J., Sales, § 690:

" 'In order for an express warranty to exist, there must be something positive and unequivocal concerning the thing sold, which the vendee relies upon, and which is understood by the parties, as an absolute assertion concerning the thing sold, and not the mere expression of an opinion; representations which merely express the vendor's opinion, belief, judgment, or estimate do not constitute a warranty.' (pp. 688, 689.) * * *"

■ After a complete review of the evidence we find the defendant wholly failed to establish that the statements testified to by him as having been made by the agent of the defendant, constitute a warranty.

All witnesses for defendant, including himself, testified there were a number of things that could cause a drop in egg production and no one testified that plaintiff's feed was the cause of such loss; and there was no proof by defendant that any of his customers quit buying chicken feed from him because they were refused financing from plaintiff to purchase the feed.

■ During the progress of the trial, the defendant was asked what representations he made to his customers as to the Nutrena feed and to which the trial court sustained an objection. The defendant then stated the defendant was acting as the agent of the plaintiff and asked leave to amend his cross petition to plead agency but the request was denied. There was no evidence to show agency at the time the objection was sustained and the request to amend was made. We have held the granting or denial of permission to amend pleadings during the trial of a cause is within the discretion of the trial court. See Cooke v. Townley, Okl., 265 P.2d 1108.

■ There are many other allegations of error as to the failure of the trial court to admit testimony. It is noted however, the defendant admits that in many of the instances, the trial court afterwards admitted the once rejected testimony. The refusal of a trial court to permit a witness to answer a competent question is not reversible error, if subsequently the witness has been permitted to answer the same question or substantially the same question. Fife v. Adair, 173 Okl. 234, 47 P.2d 145. As to the remainder of the allegations as to error in refusing to admit certain testimony, the defendant neither supports the allegations of error with convincing arguments, nor citation of authority and the same are treated as abandoned or waived. Maddox v. Bridal, Okl., 329 P.2d 1049.

Finding no error in the record, the judgment of the trial court is affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, JACKSON, BERRY and IRWIN, JJ., concur.

The Court acknowledges the aid of Supernumerary Judge, N. S. CORN, in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.